UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF: | CASE NO. 16-11273 |
| HEARTLAND DAIRY HOLDINGS LLC, | Chapter 11 |
| Debtor. | |

**ORDER**

At Fort Wayne, Indiana, on _____.

This matter is before the Court on Debtor's Motion for Authority to Incur Secured Debt (for DIP Promissory Note and Security Agreement) filed on June 21, 2016.  The Court having considered the Motion and being duly advised in the premises, hereby grants the Motion and Debtor is authorized to incur secured debt in the amount of $3,000,000.00 on the terms and conditions set forth in the Motion utilizing the Agreement attached thereto as Exhibit "A".  Said debt shall be secured as set forth in Exhibit "A".

**SO ORDERED.**

_____
Chief Judge, U.S. Bankruptcy Court

# EXHIBIT "A"

## DIP PROMISSORY NOTE
## AND SECURITY AGREEMENT

$3,000,000.00                                                                                      Rockford, Ohio
                                                                                                    June ____, 2016

      FOR VALUE RECEIVED, **Heartland Dairy Holdings LLC**, an Ohio limited liability company and the debtor and debtor-in-possession in Case No. _____ ("Case") filed under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Borrower") in the United States Bankruptcy Court for the _____ District of _____ (the "Bankruptcy Court"), hereby promises to pay to the order of United Dairy Group, LLC, an Ohio limited liability company ("Lender"), at such place as the Lender may designate in writing from time to time, the principal sum of Three Million and 00/100 Dollars ($3,000,000.00) (such amount, the "DIP Loan Amount"), or so much thereof as has been advanced and remains outstanding, together with interest at the fixed rate of five percent (5.0%) per annum; *provided, however*, that upon the occurrence and during the continuance of any Event of Default (as defined below), the outstanding principal amount of the DIP Loan Amount shall automatically thereafter bear interest payable upon demand in cash at a rate that is five percent (5%) per annum in excess of the rate in effect prior to such Event of Default ("Default Interest"), payable on the earlier of the Maturity Date or the occurrence of an Event of Default, each as defined below.

      For purposes of this DIP Promissory Note and Security Agreement ("Note"):

      "Maturity Date" means the earliest of (a) December 31, 2017, (b) the closing of a merger, sale of stock, Change of Control (as defined below) or any equity issuance by the Borrower, or any other transaction similar to the foregoing, (c) the first business day on which the UDG Financing Order expires by its terms or is terminated; (d) the closing of a sale of all or substantially all of Borrower's assets pursuant to 11 U.S.C. Sections 363, 1123, 1129 of the Bankruptcy Code or otherwise; (e) the date of the substantial consummation (as defined in Section 1101(2) of the Bankruptcy Code) of a plan of reorganization in the Case that has been confirmed by an order of the Bankruptcy Court; (f) conversion or dismissal of the Case; or (g) appointment of a trustee or examiner with enlarged powers in the Case, *provided, however*, that Lender may extend the Maturity Date beyond the date on which the Note would otherwise mature, in its sole discretion, including without limitation in order to facilitate the confirmation of a plan of reorganization of the Borrower;

      "UDG Financing Order" means an order in the Case in form and substance satisfactory to Lender, together with all extension, modifications, and amendments thereto, which, among other matters but not by way of limitation, authorizes Borrower to execute and perform under the terms of this Note and finding that Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code §364(e);

      "Change of Control" means a change in the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the Borrower, whether through the ability to exercise voting power, by contract or otherwise;

"Loan" means the aggregate amount of all advances made by Lender to Borrower and all accrued interest and other charges owed by Borrower to Lender under this Note;

"Collateral" means:

(a) all of those goods, properties and assets now owned or hereafter acquired by Borrower which were or are acquired by Borrower with proceeds from one or more advances of the Loan by Lender together, in each case, with all products (including without limitation farm products and agricultural products) and proceeds resulting therefrom (collectively, "Enabling Loan Collateral"), as to which Lender shall have a first-priority security interest and lien; and

(b) all other present and future right, title and interest in and to any and all of the personal property of the Borrower whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation accounts; chattel paper; goods; inventory; equipment; fixtures farm products; instruments; investment property; documents; commercial tort claims; deposit accounts; letter-of-credit rights; general intangibles; supporting obligations; and records of, accession to and proceeds and products of the foregoing, as to all of which Lender shall have a security interest and lien subordinate to any and all existing security interests and liens which have attached and are perfected on the date of this Note or which are perfected pursuant to an order of the Bankruptcy Court entered in the Case (collectively, "Other Collateral");

*excluding, however*, any and all claims, defenses, causes of action or rights of Borrower or its estate as arise under sections 542 through 553 of the Bankruptcy Code and any proceeds therefrom.

Borrower may prepay all or any part of the principal at any time without any prepayment penalty.

The obligation of Lender to make any advances of the Loan to Borrower is conditioned upon (a) the Bankruptcy Court having entered the UDG Financing Order, and the UDG Financing Order then being in full force and effect and not reversed, stayed, modified or amended, and (b) no event shall have occurred and be continuing that would constitute an Event of Default under this Note.

Lender will make the Loan to Borrower in multiple advances as and when requested by Borrower for the exclusive purposes of the payment of valid invoices for the purchase of dairy cattle, feed, and other working capital purposes, and for no other purposes. For the avoidance of doubt, proceeds of advances of the Loan may not be used by Borrower to repay any other indebtedness of Borrower.

As used in this Note, "Lender" includes the original Lender of this Note and any endorsee or assignee of this Note who is in possession of this Note.

Borrower hereby waives presentment, demand for payment, notice of nonpayment, notice of dishonor, protest and notice of protest, and all other notices and demands in connection with delivery, acceptance, performance, default or enforcement of this Note.

In order to secure repayment of the Loan:

1. <u>SECURITY; ADMINISTRATIVE PRIORITY</u>.

    1.1    <u>Collateral; Grant of Lien and Security Interest</u>. Borrower hereby assigns and conveys as security, grants a lien on and a purchase money security interest in, hypothecates, mortgages, pledges and sets over unto Lender all of Borrower's right, title and interest in and to all of the Collateral. Upon entry of the UDG Financing Order, the liens and security interests in favor of Lender shall be valid and perfected liens and security interests in the Collateral, (a) prior to all other liens and security interests in the Collateral as to the Enabling Loan Collateral, and (b) subordinate to any and all existing security interests and liens which have attached and are perfected on the date of this Note, but prior to any and all security interests and liens which attached or are perfected on the date of this Note, as to the Other Collateral; other than as set forth in the UDG Financing Order. Lender's liens and security interests and their priority shall remain in effect until the Loan has been indefeasibly paid in full.

    1.2    <u>Administrative Priority</u>. Upon entry of the UDG Financing Order, the Loan, pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed claims in the Case having, if and to the extent that the Collateral is insufficient to satisfy in full the Loan, priority over any and all administrative expenses.

    1.3    <u>No Filings Required</u>. The Lender's liens and security interests referred to herein shall be deemed valid and perfected by entry of the UDG Financing Order, and entry of the UDG Financing Order shall be required on or before the date of any advance of the Loan. Lender may, but shall not be required to, file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect the lien and security interest granted by or pursuant to this Note or the UDG Financing Order.

    1.4    <u>No Discharge; Survival of Claims.</u> The Loan obligations secured hereunder shall survive the entry of an order (a) confirming any plan of reorganization in the Case (and Borrower, pursuant to section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge); (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing the Case. The administrative claim granted to Lender pursuant to the UDG Financing Order and the liens and security interests granted to Lender pursuant to the UDG Financing Order shall continue in full force and effect and maintain their priority as set forth in the UDG Financing Order and this Note until the Loan has been repaid in full and all other Loan obligations have been satisfied.

2.    <u>AFFIRMATIVE COVENANTS</u>. In addition to the other covenants and agreements of Borrower set forth herein, Borrower covenants and agrees that, until payment in full of the Loan and other Loan obligations, Borrower shall perform and observe all of the following covenants:

2.1     Visits and Inspections.  Borrower will permit representatives of Lender, from time to time, as often as may be reasonably requested, to visit and inspect the Collateral and all books and records related thereto.

2.2     Notices.  Borrower will notify Lender in writing, promptly after Borrower's obtaining knowledge of (a) the existence of any Event of Default; (b) the existence of any Event of Default under any of Borrower's other secured credit arrangements; and (c) such other information with respect to Borrower or the Collateral as from time to time may be reasonably requested by Lender.

2.3     Delivery of Financial Statements, Notices and Other Reports.  Borrower shall deliver to Lender (a) monthly internally prepared balance sheet and income statement for Borrower, within 20 business days following the end of each month; and (b) upon the request of Lender, any other information reasonably requested relating to the financial condition of Borrower.

2.4     Further Assurances.  At any time or from time to time upon the request of Lender, Borrower will, at its expense, promptly execute, acknowledge and deliver such further documents and do such other acts and things as Lender may reasonably request in order to effectuate fully the purposes of this Note and to provide for payment of the Loan obligations in accordance with the terms of this Note.

3.     NEGATIVE COVENANTS.  Except as specifically authorized in the UDG Financing Order, Borrower covenants and agrees that, until payment in full of the Loan and other Loan obligations:

3.1     Conduct of Business.  Borrower shall not engage in any business other than (i) the business engaged in by Borrower on the date of the entry of the UDG Financing Order and (ii) such other lines of business as may be reasonably related thereto.

3.2     Amendments or Waivers of Certain Agreements.  Borrower shall not terminate or agree to any amendment, restatement, supplement or other modification to, or waive any of its rights under it limited liability company organizational documents if such termination, amendment, restatement, supplement, modification or waiver would be materially adverse to Borrower or Lender.

3.3     Chapter 11 Claims and Case.

(a)     Borrower shall not support or endorse any plan of reorganization or propose any sale of substantially all of the assets of Borrower without the prior written consent of Lender, which consent may be withheld in its sole discretion.

(b)     Borrower shall not support or endorse a change or permit or make any changes to the UDG Financing Order or other orders issued by the Bankruptcy Court or other court of competent jurisdiction, related to this Note or the Loan, without the prior written consent of Lender, which consent may be withheld in its sole discretion.

4

(c)     Borrower shall not consent to or assert any claims under Sections 506(c) of the Bankruptcy Code against Lender regarding the Loan for any expenses from the date of the filing of the Chapter 11 petition in the Case through the Maturity Date, nor shall Borrower consent to or commence against Lender any other actions adverse to its rights and remedies in connection with the Loan or any Bankruptcy Court order.

4.      EVENTS OF DEFAULT; REMEDIES.

4.1     Events of Default.  Notwithstanding the provisions of section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court or any notice to Borrower, and subject to Section 4.2 below, the occurrence of any one or more of the following events (regardless of the reason therefore) shall constitute an "Event of Default" hereunder:

(a)     Event of Default under Other Secured Claimant Credit Arrangements.  A "Default" or "Event of Default" occurs under any of Borrower's other secured credit arrangements for which relief from the automatic stay of section 362 of the Bankruptcy Code is granted, unless Lender consents in writing to the granting of such relief.

(b)     Payment of Loan Obligations.  Borrower fails to pay when due any of the Loan obligations.

(c)     Breach of Covenant.  Borrower fails or neglects to perform, keep or observe any covenant contained in this Note when Borrower is required to perform, keep or observe such covenant (giving effect to any grace periods, cure periods, or required notices, if any, expressly provided for in this Agreement), or expends funds from any Loan advance for purposes other than the payment of the purchase price for the acquisition of Collateral.

(d)     Challenge to or Enforceability of the Note.

(i)     Borrower or any committee duly appointed in the Case shall in any action, suit or proceeding: (A) challenge or contest the validity or enforceability of this Note or any of its provisions; (B) challenge or contest the legality or enforceability of any of the Loan obligations or the perfection or priority of any lien or security interest granted to Lender; (C) assert any claims or causes of action against the Lender in its capacity as Lender; or (D) seek to surcharge the Collateral; or

(ii)    This Note ceases to be in full force and effect for any reason other than a full or partial waiver or release by Lender in accordance with the terms thereof.

(e)     Fundamental Change.  Unless consented to in writing in advance by Lender:

(i)     Borrower amends or otherwise modifies in any way its Operating Agreement;

(ii)    Borrower removes or replaces its current sole limited liability company manager, Tjeo Willemsen, or adds an additional limited liability company manager;

5

     (iii) there occurs any cessation of a substantial part of the business of Borrower for a period which could reasonably be expected to result in (A) a material adverse change in the business, operations, results of operations, assets, liabilities or condition (financial or otherwise) of the Borrower, taken as a whole (except for the commencement of the Case and events that typically result from the commencement of cases under Chapter 11 of the Bankruptcy Code), or (B) a material impairment of the Borrower's ability to perform its obligations under this Note or of the Lender's ability to enforce this Note or realize upon the Collateral.

    (f) <u>Case</u>. The occurrence of any of the following in the Case:

     (i) the filing of a motion or taking of any action by any Borrower: (A) to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code that is secured by lien on or security interest in the Collateral of equal or senior priority to that of the liens and security interests granted to Lender securing the Loan, except with the prior written consent of Lender, which consent may be withheld in its sole discretion; (B) to grant any lien or security interest not permitted hereunder; or (C) to take any other action or actions adverse to Lender or its rights and remedies hereunder or its interest in the Collateral, including, without limitation, any such action or actions which seeks to reduce, set-off or subordinate the Loan obligations or challenge Lender's lien on and security interest in any of the Collateral;

     (ii) the filing or support by any Borrower of any plan of reorganization that is not expressly permitted hereunder or is otherwise not acceptable to Lender in its capacity as Lender;

     (iii) the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Note or the UDG Financing Order without the prior written consent of Lender, which consent may be withheld in its sole discretion, or the filing by the Borrower of a motion for reconsideration with respect to the UDG Financing Order;

     (iv) the allowance or occurrence of any claim or claims under section 506(c) or 552(b) of the Bankruptcy Code against or with respect to the Lender, the Collateral, or the Loan;

     (v) the entry of an order by the Bankruptcy Court appointing an interim or permanent trustee in the Case or an examiner in the Case with enlarged powers to operate or manage the financial affairs, the business, or reorganization of any Borrower; or the sale without the prior written consent of Lender, which consent may be withheld in its sole discretion, of all or substantially all of a Borrower's assets either through a sale under section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Case, or otherwise that does not provide for indefeasible payment in cash in full of the Loan obligations (other than contingent indemnity obligations that have been asserted and which shall be secured by a letter of credit or equivalent cash deposit in an estimated amount as agreed or determined by the Bankruptcy Court);

     (vi) the dismissal of the Case or the conversion the Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or Borrower shall file a motion

or other pleading seeking the dismissal of the Case under section 1112 of the Bankruptcy Code or otherwise;

(vii)   the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, without the prior written consent of Lender, which consent may be withheld in its sole discretion;

(viii)   the entry of an order in the Case avoiding any portion of the payments made on account of the Loan obligations owing under this Note;

(ix)   the failure of Borrower to perform its obligations under the UDG Financing Order (subject to any applicable grace or cure periods hereunder);

(x)   except as set forth in the UDG Financing Order, the entry of an order in the Case granting any other lien on or security interest in the Collateral equal or superior to that granted to Lender;

(xi)   after the initial entry of the UDG Financing Order, the UDG Financing Order ceases to be in full force and effect; or

(xii)   Borrower engages in or supports any investigation or its assertion of any claims or causes of action (or supporting the assertion of the same) against Lender; *provided that,* making information available to a statutory committee of unsecured creditors shall not be a violation of this provision.

4.2   Remedies.   Upon the occurrence of an Event of Default, Lender, without further order of or application to the Bankruptcy Court, may (x) deliver a notice of an Event of Default under this Note and the notice of the termination of the automatic stay described in clause (y) hereof; (y) upon five business days' written notice to Borrower and counsel to any committee duly appointed in the Cases, (i) charge the Default Interest on the Loan and/or (ii) declare all or any portion of the Loan obligations to be forthwith due and payable, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by Borrower; and (z) following a hearing on no less than five (5) days' notice, with respect to its motion for relief from stay (a "Stay Motion"), to exercise any and all of its rights and remedies under applicable law with respect to the Collateral, or to otherwise liquidate the Collateral (or any part thereof), and to realize on all, or part, of the Collateral including without limitation all remedies provided under the Bankruptcy Code, available to Lender. In connection with a Stay Motion, Lender shall be entitled to seek Bankruptcy Court-ordered access to all of Borrower's properties to allow Lender to obtain possession of and/or dispose of the Collateral following the occurrence of an Event of Default. All proceeds of Collateral received by Lender pursuant to this Section shall be applied to the Loan obligations.

5.   MISCELLANEOUS

5.1   Expenses.   Borrower shall pay promptly following receipt of invoices therefor, all reasonable actual out of pocket expenses incurred by Lender and the reasonable fees, charges and disbursements of third party appraisers, Lender, consultants, advisors, auditors, counsel and

financial advisors for Lender (but, as to payments to "professional persons" in the Case, limited to the extent approved by the Bankruptcy Court after notice and hearing), solely in connection with enforcement or protection of its rights in connection with this Note, including its rights under this Section, or in connection with the Loan made hereunder, including all such out of pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loan.

        5.2    <u>Failure or Indulgence Not Waiver; Remedies Cumulative</u>. No failure or delay on the part of Lender in the exercise of any power, right or privilege hereunder shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege. All rights and remedies existing under this Note are cumulative to, and not exclusive of, any rights or remedies otherwise available.

        5.3    <u>Marshalling; Payments Set Aside</u>. Lender shall not be under any obligation to marshal any assets or funds in favor of Borrower or any other party or against or in payment of any or all of the Loan obligations. To the extent that Borrower makes a payment or payments to Lender, or Lender enforces any security interests or exercises its right of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, any other state or federal law, common law or any equitable cause, then, to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all liens and security interests and rights and remedies therefore or related thereto shall be revived and continued in full force and effect as if such payment or payments had not been made or such enforcement or setoff had not occurred.

        5.4    <u>Severability</u>. In case any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

        5.5    <u>Applicable Law; Successors and Assigns</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF OHIO, EXCEPT AS GOVERNED BY THE BANKRUPTCY CODE. This Agreement shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of Lender. Borrower's rights or obligations hereunder, or any interest therein, may not be assigned or delegated by Borrower without the prior written consent of Lender. Lender may assign its rights under this Note to any affiliate of Lender.

        5.6    <u>Waiver of Jury Trial</u>. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT,

TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS NOTE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

      5.7     <u>Counterparts; Integration; Effectiveness; Miscellaneous</u>. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Note constitutes the entire contract among the parties relating to the subject matter hereof and supersedes any and all previous agreements and understandings, oral or written, relating to its subject matter.

*Signature page follows.*

9

IN WITNESS WHEREOF, the parties have executed this Note as of the date first set forth above.

**Borrower**

Heartland Dairy Holdings LLC


By_____

Print_____

Title_____


**Lender**

United Dairy Group, LLC


By_____

Print_____

Title_____

10