**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

**IN THE MATTER OF:**                  **CASE NO. 16-11273**

**HEARTLAND DAIRY HOLDINGS LLC,**      **Chapter 11**

        **Debtor.**

**DISCLOSURE STATEMENT**

**I.**

*A.  Introduction*

Heartland Dairy Holdings, LLC, the Debtor-in-Possession, provides this Disclosure Statement to all of its creditors in order to disclose that information deemed by the Debtor to be important and necessary for exercising their right to vote for acceptance of the Plan of Reorganization filed with the Court on **March 3, 2017**.

Those creditors whose claims are impaired under the Plan may vote on the Plan by filling out and mailing to Daniel J. Skekloff and Scot T. Skekloff, Haller & Colvin, P.C., 444 East Main Street, Fort Wayne, Indiana 46802, a Ballot which will be supplied by the Court.  In order for the Plan to be accepted by Ballot, Ballots of voting creditors who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of allowed claims of all Classes must be cast in favor of the acceptance of the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THEIR FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY PROMISSORY NOTE TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND/OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON INTERNAL ACCOUNTING PERFORMED BY THE DEBTOR.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

### B.  General Information

Essentially, the purpose of any reorganization or rehabilitation under chapter 11 is to preserve the assets of the Debtor and save it from disastrous or premature sales, such as at foreclosure, so that junior interests (junior mortgage holders and unsecured, general creditors, and Debtor) will receive the greatest possibility of preserving their right to recovery or equity in the Debtor's property.  Plans of Reorganization providing for extensions of debt as a primary system of restructuring finances appear to be the most practical solution of the problem under chapter 11 of our present Bankruptcy Code.

There are limitations on what a debtor can do under a Chapter 11 Plan; primarily, a Plan may be confirmed over the objections of a Class of secured creditors only if the Court finds that those creditors are given fair and equitable treatment, and secured creditors must receive the "indubitable equivalent" of the value of their security.  However, "indubitable equivalent" does not necessarily mean that secured creditors must receive payment right away; what it means is that the secured creditors, if they must wait, are entitled to a reasonable rate of interest on their money until they are paid.  In other words, where a secured creditor is receiving payment in full over a reasonable period of time, with an appropriate interest or discount factor being paid, that creditor is receiving all the law requires, that is — full payment over a reasonable period of time.  Under the new Bankruptcy Code, the term of any mortgage debt may be extended; payments required under the mortgage, of either principal or interest, may be postponed; and deferred or reduced payments of principal or interest may be added to the mortgage balance.  Illustrative of this point is the case of In re Hollanger, 8 B.C.D. 365 (1981) involving farmers in which the Court allowed postponement of arrearages on mortgage debt for seven (7) years.

### C.  General Background

Heartland Dairy Holdings, LLC (hereinafter "Heartland Dairy", "Debtor" or "Debtor-in-Possession") operates from its dairy farm facility located at 3101 Tama Road, Rockford, Ohio 45882.  Heartland Dairy Holdings, LLC was formed in August, 2010. The LLC has been operating as a dairy farm since October, 2011. The dairy farm operation and facilities consist of seven buildings situated on 63.63 acres in Mercer County Ohio.  The dairy has been permitted for 2,100 milking head and has a capacity for 2,100 head of dairy cows.  The dairy had financial difficulties when it experienced low milk prices which resulted in a lack of profitability. Ultimately, the dairy fell behind on payments to creditors. A lawsuit was filed by Homan, Inc. to collect on a mechanic's lien. This lawsuit was filed in the Common Pleas Court of Mercer County, Ohio.  First Farmers Bank, which held a mortgage and lien on the assets of the dairy, was added as a party to the lawsuit.  A Receiver was appointed on January 5, 2016 in that proceeding.  See Section I., Part H. below - Receiver. Faced with the foreclosure action, the appointment of a Receiver and impending collection proceedings associated therewith, the Debtor sought relief under Chapter 11 of the United States Bankruptcy Code.

### D.  Commencement of the Chapter 11 Case

On June 17, 2016, Heartland Dairy Holdings, LLC, filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

Northern District of Indiana, Fort Wayne Division. Heartland Dairy continues in possession of its property and manages its business as Debtor-in-Possession under §§1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's reorganization case.  The Bankruptcy Court entered its Notice of Status as, and Obligations of, Debtor-in-Possession in Chapter 11 on June 22, 2016.

### E.  Creditors' Committee

The office of the United States Trustee has not appointed an Unsecured Creditors' Committee.

### F.  Retention of Professionals

At the commencement of the Debtor's reorganization case, the Debtor retained Daniel J. Skekloff and Scot T. Skekloff, as co-bankruptcy counsel, each of whom has been authorized to represent Heartland Dairy as Debtor-in-Possession by Order Authorizing Employment of Attorney dated August 12, 2016.

### G. Pre-Petition Equity Security Holders

At the commencement of the case, Debtor submitted the following list of equity security holders:

| | |
|---|---|
| John W. Glessner | 80% |
| Lee R. Vergara | 20% |

Since the formation of the LLC in May 2010 until the middle of June 2016, the Debtor had been owned by John Glessner.  John Glessner is and has been a resident of Arizona and, at the filing of the Chapter 11 case, was the Member Manager of the dairy.  In June 2016, John Glessner transferred a twenty percent (20%) membership interest of the pre-petition membership interest in the Debtor to Lee Vergara.  Lee Vergara is a resident of Fort Wayne, Indiana.

### H.  Receiver.

At the commencement of the chapter 11 case, a Receiver had been appointed over Heartland Dairy in the case of *Homan, Inc. vs. Heartland Dairy Holdings, LLC*, Case Number 14-CIV-048 in the Common Pleas Court of Mercer County, Ohio. Homan, Inc., a mechanic's lien creditor of the Debtor, instituted a foreclosure proceeding in that case. First Farmers was joined as a party in that case because of its mortgage on the real property subject of the lawsuit. First Farmers answered the Homan, Inc. Complaint, but did not become active in the case until a later payment default on the debts owed by the Debtor to First Farmers. Accordingly, on January 5, 2016, First Farmers amended its pleadings in the Homan, Inc. case in order to seek foreclosure of the First Farmers mortgage and other lien positions and to obtain the appointment of a Receiver.  The Mercer County Court appointed Brett Salyers of Halderman Farm Management Service, Inc. as the Receiver by Court Order dated January 5, 2016.  A Receiver was in place at the commencement of the chapter 11 case and continued in that role until in or around September

2016. As part of the chapter 11 bankruptcy case, management of the Debtor transitioned away from the Receiver to Teunis "Tejo" Willemsen, who presently serves as the Manager of the Debtor.  See Section I., Part M. Management of the Debtor below. With the Receiver in place at the commencement of the bankruptcy case, the Post-Petition Operating Reports, which are summarized below (See Section I., Part O. Status of Operations), were initially prepared based upon information provided the Receiver.  Beginning in the month of September 2016, the operating reports have been prepared by the Debtor's current manager, Tejo Willemsen. Accordingly, at the present time, the Receiver is no longer managing or overseeing the operations of the Debtor.  At the commencement of the case, there existed unpaid bills and expenses incurred by the Receiver. See Section I., Part K. below – Motion to Distribute Loan Proceeds.

### *I.  Asset Valuation Agreement*

As noted, at the commencement of the case, a Receiver was in place as a result of the state court litigation captioned *Homan, Inc. vs. Heartland Dairy Holdings, LLC* in the Common Pleas Court of Mercer County, Ohio.  First Farmers later joined and actively participated in that case. First Farmers asserted a lien on all assets of the Debtor, including, among other things, Debtor's livestock including products and proceeds thereof as well as feed, silages and supplies owned by the Debtor.  Post-petition, Debtor and First Farmers entered into discussions as to issues concerning valuing certain assets upon which First Farmers asserted a lien.  These assets include the cows at the Debtor's dairy facility, the corn silage, haylage, wheatlage and cover crop and other feed and supplies at the Debtor's facility as well as cash collateral assets including milk, milk proceeds, other income, bank account and corn crops growing in the field. As a result of the discussions between the Debtor and First Farmers, the parties entered into a Settlement Agreement subject of a Motion to Approve Settlement Agreement with First Farmers Bank and Trust Co. and United Dairy Group, LLC (Doc. No. 60).

The intent and purpose of the Settlement Agreement was to establish terms for valuing the Assets so that those Assets could be fully refinanced utilizing a post-petition loan which was to be provided to the Debtor by United Dairy Group.  This loan was the subject of the Debtor's Motion for Authority to Incur Post-petition Secured Debt (Doc. No. 13).  See Section I., Part J. - Post-Petition Loan below.  Pursuant to the Settlement Agreement, the parties agreed to value the Assets subject thereof and further agreed that any and all liens that attached and were perfected as to the Assets would attach to the proceeds of the loan amount to be utilized for the refinancing of the Assets. Under the Settlement Agreement, the Assets were agreed to be valued as follows:

a.    All living cows refinanced at a value of $1,200 for each cow that was living as of July 27, 2016, which were counted and agreed to be 1,096 (for a total of **$1,315,200.00**);

b.    The corn silage on the premises as of July 27, 2016 valued on the "as fed" value of $45.00 per ton, which was agreed to provide a total of **$30,960.00**.

c.    The Haylage on the premises as of July 27, 2016 valued at the price of $204.00 per 85% Dry Matter ton, which was agreed to provide a total of **$68,043.69**.

d.      All Wheatlage and Cover Crop on the premises as of July 27, 2016 valued at the price of $125.00 per 85% Dry Matter ton, which was agreed to provide a total of **$88,871.40**.

e.      All proceeds from the sale of milk, culled cows, and calves was pro-rated so that the amounts attributable to the operations or sales on or before July 27, 2016 were included in the amounts being refinanced and all proceeds from the sale of milk for operations on or after July 28, 2016 were acknowledged to be subject to the liens of UDG and not subject to the refinance, but the proceeds of the sale of milk (including the prorated portions that were subject to being refinanced) remained available for use to fund the operations of the dairy until UDG actually funded the refinance amounts, so that regardless of the use of the proceeds received or to be received relating to the milk produced on or before July 27, 2016, the amount to be refinanced was to be the full milk proceeds pre-July 28, 2016.

f.      The funds on deposit as of the close of business on July 27, 2016 in the amount of **$129,828.30**, but subject to adjustment for outstanding checks pertaining to goods and services delivered on or before July 28, 2016 or for any other accounting to reconcile liabilities and expenses attributable to the pre- and post-July 27, 2016 close of business date referenced hereinabove, were included in the amounts being refinanced by UDG, but were to remain available for use for the operations of the dairy until UDG actually funded the refinance amounts, so that regardless of use of funds from and after July 27, 2016, the amount to be refinanced is the amount on deposit as of July 27, 2016.

g.      The commodities on hand as of July 27, 2016 valued at a total of **$83,442.06** the most recent cost per ton, which was agreed to include the following:

| Description of Commodity | Average Tonnage | Average Price Per Ton as fed | Commodity Value (Tonnage x Price) |
|---|---|---|---|
| Energy Booster | 2.1 | $1,314.65 | **$2,760.77** |
| Reashure | 0.5861625 | $4,853.62 | **$2,845.01** |
| Square Bales of Hay | 7.64 | $182.66 | **$1,395.49** |
| Square Bales of Straw | 1.25 | $125.00 | **$156.25** |
| Soybean Meal | 26 | $376.38 | **$9,786.00** |
| Hominy | 28.8 | $145.39 | **$4,187.20** |
| Ground Corn | 36.31 | $159.73 | **$5,799.83** |
| Lactating Mineral | 17 | $868.10 | **$14,757.75** |
| Canola | 26 | $304.87 | **$7,926.50** |
| Soy Hulls | 11.5 | $120.00 | **$1,380.00** |
| Far Off Drycow Mineral | 4 | $1,006.45 | **$4,025.80** |
| Close Up Drycow Mineral | 3.75 | $784.50 | **$2,941.88** |
| Fesh Cow pre-mix | 6 | $279.66 | **$1,677.96** |
| Milk-cow premix | 32.5 | $52.62 | **$1,710.15** |
| Wet Gluten | 39 | $65.00 | **$2,535.00** |
| Square bales of Straw - Tarped | 146.81 | $123.10 | **$18,072.12** |
| DTX (Mold Inhibitor) | 0.2275 | $6,524.62 | **$1,484.35** |

h.    Corn crops growing in the field, including 51.5 +/- acres that were rented by Heartland from Robert Linn and 16.5 +/- acres that are owned by Heartland, were valued at cost paid or incurred as of July 27, 2016, which was agreed to be **$37,320.61**.

The Bankruptcy Court approved the Settlement Agreement by Court Order dated September 21, 2016 (Doc. No. 75).    Accordingly, the Assets subject of the Settlement Agreement were valued pursuant to the terms as set forth in that agreement and following Court approval of the Post-petition Secured Loan from UDG, the amount of $1,796,176.03 was placed in a separate, segregated account. The Debtor has filed a Motion to Distribute the Proceeds from the segregated account. See Section I., Part K. - Motion to Distribute Loan Proceeds below.

### *J.  Post-petition Loan*

Post-Petition, Debtor filed a Motion for Authority to Incur Post-petition Loan. By this Motion, Debtor sought approval of post-petition secured financing. This Motion was approved by Court Order dated September 21, 2016.  As result of the Motion and Order, Debtor has obtained from United Dairy Group, LLC a Three Million Dollar ($3,000,000.00) Debtor-in-Possession ("DIP") loan, which loan is secured by cattle, feed, supplies and other materials acquired by the Debtor utilizing the loan proceeds as more fully described below.  In general terms, the DIP Promissory Note and Security Agreement which has been approved by the Court, provides for the following:

a.    A DIP Loan Amount of $3,000,000.00; [Note, however, pursuant to Court Order dated February 23, 2017 approving the Debtor's Motion for Authority to Incur Additional Post-petition Secured Debt (Doc. No. 142), the amount of the loan amount has been increased to $5,250,000.00.]

b.    Interest at the rate of five percent (5.0%) per annum, with a default rate of ten percent (10%) per annum;

c.    The Note maturity date of December 31, 2017 or the earlier of a merger, stock sale or Change of Control (as to the management of the Debtor as defined in the Note), the date of expiration of the loan authorization by the Bankruptcy Court, a sale of all or substantially all of the Borrower's assets, the date of substantial consummation of a plan of reorganization that has been confirmed by the Bankruptcy Court, the conversion or dismissal of the chapter 11 case or the appointment of a trustee or examiner;

d.    As Collateral, UDG (the Lender) is to have a security interest as follows:

(a) all of those goods, properties and assets now owned or hereafter acquired by Borrower (the Debtor) which were or are acquired by Borrower with proceeds from one or more advances of the Loan by Lender together, in each case, with all products (including

without limitation farm products and agricultural products) and proceeds resulting therefrom (collectively, "<u>Enabling Loan Collateral</u>"), as to which Lender shall have a first-priority security interest and lien; and

(b) all other present and future right, title and interest in and to any and all of the personal property of the Borrower whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation accounts; chattel paper; goods; inventory; equipment; fixtures farm products; instruments; investment property; documents; commercial tort claims; deposit accounts; letter-of-credit rights; general intangibles; supporting obligations; and records of, accession to and proceeds and products of the foregoing, as to all of which Lender shall have a security interest and lien subordinate to any and all existing security interests and liens which have attached and are perfected on the date of this Note or which are perfected pursuant to an order of the Bankruptcy Court entered in the Case (collectively, "<u>Other Collateral</u>");

*excluding, however*, any and all claims, defenses, causes of action or rights of Borrower or its estate as arise under sections 542 through 553 of the Bankruptcy Code and any proceeds therefrom.

e.    UDG is also to have a super priority administrative claim pursuant to 11 U.S.C. §364(c)(1) if and to the extent the Collateral is insufficient to satisfy the full payment of the Loan;

f.    The Note provides, *inter alia*, for inspections, notices, delivery of financial statements;

g.    Additionally, the Note provides that the Borrower shall not support or endorse any plan of reorganization or sale without prior written consent of Lender nor will Borrower support or endorse a change of the Order approving the Loan;

h.    The Note further sets forth Events of Default and remedies and various miscellaneous provisions all as set forth and identified by the Note subject of the Motion for Authority to Incur Post-Petition Secured Debt that has been approved by the Court.

Debtor has utilized proceeds from this post-petition loan to fund the refinancing of the assets subject of the Motion to Approve Settlement Agreement with First Farmers Bank and Trust Co. See Section I., Part I. Asset Valuation Agreement above. Accordingly, utilizing this post-petition DIP loan, Debtor has set aside $1,796,176.03 in a segregated account for distribution to those creditors holding lien priorities as to such asset proceeds. See Section I., Part K. Motion to Distribute Loan Proceeds below. In addition, Debtor has utilized the post-

petition DIP loan in the continued operation of the dairy. The present balance of the post-petition line of credit loan is $2,406,176.03 as of February 28, 2017.

### K.  Motion to Distribute Loan Proceeds

As noted herein, Debtor filed a Motion to Approve Settlement Agreement with First Farmers Bank and Trust as well as a Motion for Authority to Incur Post-petition Secured Debt. Both Motions have been approved by the Bankruptcy Court. Subsequent thereto, Debtor filed a Motion to Distribute Loan Proceeds on September 30, 2016 (Doc. No. 84).  Pursuant to the Motion to Approve Settlement Agreement, and as above noted, the Bankruptcy Court approved a Settlement Agreement entered into by and between the Debtor and First Farmers regarding the value of certain assets upon which First Farmers asserted a lien, including the cows at the Debtor's facility, the corn silage, haylage, wheatlage, cover crop and other feed and supplies at the Debtor's facility as well as cash collateral assets, including milk, milk proceeds, other income, bank account and corn crops growing in the field, collectively referred to as the Assets. The intent and purpose of the Settlement Agreement was to establish terms for valuing those Assets as established therein so that they may be fully refinanced utilizing the post-petition loan that has been approved by the Bankruptcy Court. Consistent with the Settlement Agreement, the Debtor has deposited into a separate collateral account the sum of $1,796,176.03, utilizing the post-petition loan facility provided by UDG.  These funds have been deposited in a separate collateral account for distribution pursuant to further Order.  Accordingly, Debtor filed its Motion to Distribute Loan Proceeds seeking authority to make distribution from the proceeds of the loan provided by UDG for the refinance of the Assets which has been deposited in the collateral account.

Pursuant to the Motion to Distribute Loan Proceeds, Debtor seeks approval of payment of the referenced Receiver-incurred creditor bills and expenses as well as the Receiver fees, costs and expenses and Receiver attorney fees from the proceeds held in the collateral account resulting from the refinance of the Assets.  Debtor asserted in the Motion that the applicable Ohio Revised Code Section 2735.04 and the Order entered in the state court Receiver action would provide for and require payment priority as to Receiver-incurred costs and expenses. Pursuant to the Motion, Debtor sought authority to distribute loan proceeds from the collateral account to First Farmers in the amount of $355,000.00 plus interest of $6,184.00 accrued through the Chapter 11 petition date on account of a loan made by First Farmers to the Receiver as part of the State Court Receivership Proceeding.  In addition, Debtor sought authority to make distribution in accordance with the proposed distribution list that was identified in the Motion and is attached hereto as **Exhibit A**. This list, attached hereto as **Exhibit A**, includes unpaid bills and expenses incurred by the Receiver including Receiver fees and expenses as well as Receiver attorney fees that have been incurred by the Receiver who was in place at the commencement of the chapter 11 bankruptcy case.  Accordingly, pursuant to the Motion, Debtor sought authority for the payment of the First Farmers loan (including accrued interest) to the Receiver totaling $361,184.00 and those referenced creditors in the attached **Exhibit A**.  The remainder of the loan proceeds in the collateral account, as requested in the Motion, would then be paid to First Farmers as a result of its lien interest in the assets subject of the Settlement Motion.  First Farmers has objected to this Motion asserting that it has a lien interest in the entirety of the collateral account which has priority over any and all other liens and claims as to those funds.

Presently, it is anticipated that by agreement of the Debtor and First Farmers, the collateral account will be abandoned from the bankruptcy estate and the issue of the priority of claims, as it relates to the collateral account funds, will be determined by the Common Pleas Court of Mercer County Ohio in the still pending Case No. 14-CIV-048, Homan, Inc. vs. Heartland Dairy Holdings, LLC.

### L.  Real Estate Valuation Information

Post-petition, Debtor obtained appraisals of the real estate owned.  Brad A. Wisener and Timothy L. Harpster, ARA of Consolidated Appraisal Services Company, Wapakoneta, Ohio, provided an appraisal of Debtor's real estate and dairy facility. This appraisal, with an effective date of July 15, 2016, indicated an opinion of value of $5,600,000.00 based upon an estimated marketing time of six (6) to nine (9) months.

Additionally, Debtor is aware of an appraisal conducted by Gary S. Wright, MAI, FRICS, SRA and Cory J. Hartfield of Integra Reality Resources, Cincinnati, Ohio, prepared on behalf of United Dairy Group. This appraisal indicated a market value as of August 12, 2016, of $4,840,000.00.

Upon discussion, review and analysis by Debtor and First Farmers, First Farmers and the Debtor have entered into a Stipulation with respect to the value of the real estate for purposes of this chapter 11 proceeding regarding the treatment of the First Farmers' secured claim.  Pursuant to this Agreement, Debtor and First Farmers have agreed to the value of the real estate of $5,500,000.00.

### M.  Management of the Debtor

At the commencement of the case, a Receiver had been appointed over the operation of the Debtor and the Debtor's dairy farm operation was being managed by the Receiver, Brett Salyers of Halderman Farm Management Service, Inc.  Post-petition, following a period of transition which concluded in the month of October, the Debtor has subsequently been managed by Tejo Willemsen.   Mr. Willemsen was not employed by the Debtor prior to the commencement of the chapter 11 case, but on a post-petition basis, Mr. Willemsen has become employed by the Debtor for the purposes of management and oversight of the dairy as well as assisting the Debtor with requirements in the administration of the chapter 11 case.  Mr. Willemsen's post-petition compensation is $2,200.00 per week as set forth and provided in the Statement of Insider Compensation filed in this proceeding. Mr. Willemsen has experience in the dairy industry. He has been a consultant for New Holland Dairy of Bluffton, Indiana, for approximately one (1) year. Additionally, Mr. Willemsen operates his own dairy and a milk trucking company. Debtor anticipates that on a post-petition basis, Mr. Willemsen will continue to provide management services for the Debtor.

### N.  Debtor's Real Estate Owned

As identified in Debtor's Schedule of Assets, Debtor is the owner of a dairy farm with buildings and improvements located at 3101 Tama Road, Rockford, Ohio 45882.  There are

seven buildings constructed on the property for the dairy farm operations. The real estate is comprised of approximately 63.63 acres of which approximately 16.5 acres are tillable. The dairy farm operation has been permitted for 2,100 milking head and has a capacity for 2,100 head of dairy cows.

### *O.  Status of Operations*

1.  Current (Post-Petition) Operations.

Heartland Dairy has, since the filing of the Petition, continued in its operation. Since the date of filing, Heartland Dairy, pursuant to operating reports filed, has had the following operating income and expenses from its operation:

*June 17 – 30, 2016:*
| | |
|---|---|
| Total Receipts: | 205,408.42 |
| Total Expenses: | 168,732.74 |
| Net Profit (Loss): | 36,675.68 |

*July 2016:*
| | |
|---|---|
| Total Receipts: | 390,590.02 |
| Total Expenses: | 439,391.02 |
| Net Profit (Loss): | (48,801.00) |

*August 2016:*
| | |
|---|---|
| Total Receipts: | 405,857.46 |
| Total Expenses: | 342,976.64 |
| Net Profit (Loss): | 62,880.82 |

| *September 2016 (original):* | | *September 2016 (amended):* | |
|---|---|---|---|
| Gross Receipts: | 504,876.36 | Gross Receipts: | 504,876.36 |
| Less: returns or allowances: | 23,783.29 | Less: returns or allowances: | 23,783.29 |
| Cost of Goods Sold: | 212,562.57 | Cost of Goods Sold: | 212,562.57 |
| Total Income: | 268,530.50 | Total Income: | 268,530.50 |
| Total Expenses: | 164,793.33 | Total Expenses: | 164,793.33 |
| Net Profit (Loss): | 103,737.17 | Net Profit (Loss): | 103,737.17 |
| | | | |
| Total Receipts: | 2,212,488.90 | Total Receipts: | 2,212,488.90 |
| Total Disbursements: | 383,414.18 | Total Disbursements: | 375,296.22 |
| Net Cash Flow: | 1,829,074.72 | Net Cash Flow: | 1,837,192.68 |

**_October 2016 (original):_**

| | |
|---|---:|
| Gross Receipts: | 378,799.66 |
| Less: returns or allowances: | 6,679.36 |
| Cost of Goods Sold: | 251,446.66 |
| Total Income: | 120,673.64 |
| Total Expenses: | 165,006.93 |
| Net Profit (Loss): | (44,333.32) |
| | |
| Total Receipts: | 375,859.01 |
| Total Disbursements: | 475,482.30 |
| Net Cash Flow: | (99,623.29) |

**_October 2016 (amended):_**

| | |
|---|---:|
| Gross Receipts: | 378,759.66 |
| Less: returns or allowances: | 6,679.36 |
| Cost of Goods Sold: | 251,446.66 |
| Total Income: | 120,673.64 |
| Total Expenses: | 165,006.96 |
| Net Profit (Loss): | (44,333.32) |
| | |
| Total Receipts: | 375,859.01 |
| Total Disbursements: | 442,107.82 |
| Net Cash Flow: | (66,248.81) |

**_November 2016:_**

| | |
|---|---:|
| Gross Receipts: | 369,776.35 |
| Less: returns or allowances: | 7,486.90 |
| Cost of Goods Sold: | 266,687.41 |
| Total Income: | 95,602.04 |
| Total Expenses: | 295,578.26 |
| Net Profit (Loss): | (199,976.22) |
| | |
| Total Receipts: | 365,635.12 |
| Total Disbursements: | 482,478.16 |
| Net Cash Flow: | (116,843.04) |

**_December 2016:_**

| | |
|---|---:|
| Total Income: | 322,274.64 |
| Total Expenses: | 431,661.17 |
| Net Profit (Loss): | (109,386.53) |
| | |
| Total Receipts: | 523,416.24 |
| Total Disbursements: | 554,534.84 |
| Net Cash Flow: | (31,118.60) |

**_January 2017:_**

| | |
|---|---:|
| Total Income: | 368,314.09 |
| Total Expenses: | 470,007.50 |
| Net Profit (Loss): | (101,693.41) |
| | |
| Total Receipts: | 361,627.28 |
| Total Disbursements: | 304,308.38 |
| Net Cash Flow: | 57,318.90 |

### *P.  Synopsis of Tax Implication for Reorganization*

Prior to the commencement of the case, Debtor was organized as a limited liability company (LLC) with an elected treatment as a partnership for income tax purposes, reporting income and expenses on IRS form 1065 U.S. Return of Partnership Income as a pass-through entity.  In very general terms, typically for a pass through entity, prior year losses do not carry forward as to the entity.

The Debtor's proposed Plan provides for a restructuring of the ownership of the Debtor. As such, the federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the Internal Revenue Service or an opinion of counsel concerning same.

By this statement, Debtor and Debtor's counsel are not and should not be construed to be rendering tax advice to any creditor, party in interest or recipient of this Disclosure Statement. Notwithstanding the foregoing, should anything contained herein be deemed to be now or at a later time tax advice, the following disclosure is made: To ensure compliance with the requirements imposed by the Internal Revenue Service under Circular 230, Debtor informs you that any U.S. federal tax advice contained in this communication (including attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code, or (2) promoting, marketing or recommending to another party any matters addressed herein.

Accordingly, any person who may be affected by implementation of the Plan, including creditors and equity interest holders of the Debtor, should consult their own tax advisors with respect to and/or regarding the tax consequences under federal and any applicable state, local, commonwealth, or foreign law.

## II.

### *Debts and Assets Analysis*

### *A.  Assets*

1.    Real Estate:

The Debtor owns the following parcels of real estate:

Dairy farm with buildings, improvements; approximately
     sixteen and one-half (16.5) tillable acres located
     at 3101 Tama Road, Rockford, OH 45882       $5,500,000.00

2.    Personal Property:

The amounts listed in Schedule "B" of the Schedules of Assets and Liabilities (filed July 15, 2016) were accurate to the best of the Debtor's knowledge.  Accordingly, the Debtor's

personal property at the time of the Chapter 11 filing had a value as follows:

| | |
|---|---:|
| First Farmers Bank & Trust | $62,973.84 |
| Cover Crop Purchase Agreement<br>    - $150,000 to Schwiet Acres LLC | Unknown |
| Cash rent of 50 acres from Bob Linn Farm<br>    - March Installment paid | Unknown |
| 60 acres alfalfa when harvested<br>    - down payment $25,000 made | Unknown |
| Crops either planted or harvested 16.5 acres<br>    approximately plated at debtor's farm | Unknown |
| 1,192 dairy cows | $1,200,000.00 |
| Farm equipment, chopper; electric generator;<br>    skid load, truck body for bedding; bedder;<br>    tire scrapper; fuel tank | $350,000.00 |
| 2003 Case Skidloader, Model 60XT | $12,000.00 |
| 3 Bobcats | Leased |
| Farm supplies, chemicals and feed inventories:<br>    wheatlage, haylage, corn, silage | $180,000.00 |
| Vaccines and supplies | Unknown |
| 3 desks, 1 table and miscellaneous office furnishings | Unknown |
| 2 computers | $600.00 |
| 50 acres leased farm land | Unknown |
| **TOTAL**: | $1,805,573.84 |

### *B.  Debts*

The following information is a summary of the Debtor's debt obligations pursuant to information as set forth in the Schedules filed in the case.  These amounts are presented as an indication of the Debtor's financial status as of the commencement of the case.

1.    Secured Creditors:

The following is the creditor scheduled by the Debtor claiming security interests (secured in whole or in part) and the estimated amount of the claim:

First Farmers Bank and Trust            $8,204,758.39  [1]

Additionally, Debtor scheduled the following as secured creditors.  These represent debts incurred by the Receiver outstanding at the time of the commencement of the case.  Debtor has

---

[1] Pursuant to proof of claim filed.  Debtor scheduled the claim of First Farmers Bank & Trust at $7,470,894.00.  The Bank has field a proof of claim indicating the unpaid balance as of the petition date of $8,204,758.39.

filed a Motion to Distribute Loan Proceeds – see Section I. Part K. Motion to Distribute Loan Proceeds above.  First Farmers opposes the Motion and maintains the referenced creditors are not secured and/or do not have lien priority superior to the Bank. Debtor anticipates that this matter, as to the extent and priority of lien claims (if any), will be determined by the Mercer County Ohio Court in which the receivership matter was originally field and presently pends.

| | |
|---|---|
| 3R Agri Inc. | $10,425.00 |
| Benjamin Girod | $10,710.00 |
| Buschur Feeds | $109,282.33 |
| Buschur's Custom Farm Service, Inc. | $500.00 |
| Carne 1 Corp. | $1,029.24 |
| Chamberlin | $26,858.40 |
| Craig Hall | $984.18 |
| David Bollenbacher | $4,115.02 |
| Devin Bollenbacher | $9,456.52 |
| DHI Cooperative | $1,269.12 |
| Girod Farms Trucking LLC | $6,840.00 |
| Hall Ag Services | $12,318.00 |
| Hemker Trucking LLC | $18,270.00 |
| Jennings Creek Pumping, LLC | $57,290.38 |
| Mark Vogel | $1,952.00 |
| Mercer County Treasurer | $37,461.32 |
| Renovations, Inc. | $12,000.00 [2] |
| Sutter Brothers Ltd. | $1,702.24 |
| Youngpeter Farms | $13,750.00 |
| Zimmerman Sales & Service | $2,524.38 |
| **TOTAL:** | $338,738.10 |

2.     Unsecured Creditors:

All creditors of the Debtor not listed above are considered unsecured.  The total of all claims listed by the Debtor in its Schedule "F", filed July 15, 2016, as unsecured is $1,287,708.50.

3.     Priority Claims:

Debtor, in the Schedules filed, indicated the following claims:

| | |
|---|---|
| Tony Wasmund – wages | $49,323.44 [3] |

---

[2] Security interest in 2003 Skidloader.
[3] Pursuant to proof of claim filed on behalf of Anthony L. Wasmund.

| | | |
|---|---|---|
| Ohio Department of Taxation | $1,293.17 | [4] |
| Internal Revenue Service | $12,033.72 | [5] |
| **TOTAL:** | $62,650.33 | |

4.    Summary:

| | |
|---|---|
| Creditors claiming security: | $8,543,496.49 |
| Unsecured Creditors: | $1,287,708.50 |
| Priority Tax Claims: | $62,650.33 |
| **TOTAL**: | $9,893,855.32 |

It is expected that there will be some adjustment to these amounts when exact amounts of claims become known.

### *C.  Liquidation Analysis*

The Liquidation Analysis is provided for a comparison of what creditors would receive in a chapter 7 liquidation as opposed to what is provided under the proposed Chapter 11 Plan. In a liquidation, secured creditors are entitled to distribution from proceeds of their collateral prior to distribution to other creditors.

Real Estate:

Debtor scheduled real estate consisting of the Debtor's dairy farm facility with a scheduled value of $5,500,000.00.  As above-referenced, Debtor has information from two (2) post-petition appraisals with one appraisal indicating a current value of $5,600,000.00 and the other setting forth a market value of $4,840,000.00.  Further, Debtor and First Farmers have entered into a stipulation providing that the real estate has a value of $5,500,000.00.  Accordingly, in a liquidation, considering short-term sale and costs associated with sale, Debtor estimates that the Debtor's real estate would likely result in proceeds of ninety percent (90%) of this $5,500,000.00 value or approximately $4,950,000.00.

The real estate is subject to the secured claim of First Farmers.  First Farmers has filed a proof of claim indicating a secured claim of $8,204,758.00 at the commencement of the chapter 11 case.

Personal Property:

Debtor scheduled personal property which may be categorized as follows:

---

[4] Pursuant to proof of claim filed.
[5] Pursuant to proof of claim filed, the IRS claim contains estimated amounts to which Debtor believes will be subject of adjustment.

Dairy cows
Corn silage, haylage, wheatlage and cover crop
Commodity supplies
Corn crop growing in field, including 51.5 +/- acres rented from
Robert Linn and 16.5 +/- acres at Debtor's facility

These assets were valued pursuant to a Settlement Agreement by and between Debtor and First Farmers that has been subject of a Motion to Approve Settlement Agreement (Doc. No. 60) and approved by the Bankruptcy Court Order entered September 21, 2016 (Doc. No. 75). The intent and purpose of the Settlement Agreement was to establish terms for valuing these above-referenced assets so that these assets could be fully refinanced utilizing a post-petition loan provided to the Debtor by United Dairy Group. This loan refinancing has occurred and as of the date hereof, there is $1,796,176.03 in a segregated account ("Collateral Account") representing the proceeds of these assets. The post-petition loan from United Dairy Group utilized is secured by these assets. As such, in a liquidation of these assets, proceeds therefrom would be utilized to pay Debtor's post-petition loan from United Dairy Group.

The Collateral Account is subject to the lien of First Farmers. Debtor asserts, but First Farmers does not agree, that other claims and debts incurred by the Receiver have priority over First Farmers pre-petition blanket lien. Debtor has filed a Motion to Distribute Loan Proceeds seeking payment of Receiver incurred debts (including a loan incurred by the Receiver from First Farmers) prior to distribution to First Farmers on account of its secured lien interest. Debtor believes that the issue of distribution of the proceeds of the Collateral Account will be determined by the Mercer County Ohio Court. For purposes of considering a hypothetical liquidation, the proceeds in the Collateral Account would either be paid entirely to First Farmers on account of its secured claim or approximately $439,055.00 would be paid to claimants on debts incurred by the Receiver with remainder thereafter paid to First Farmers on account of its secured claim.

Additional assets scheduled by the Debtor are as follows:

| Asset | Scheduled Value |
|---|---|
| Farm equipment | $350,000.00 |
| 2003 Case Skidloader, Model 60XT | $12,000.00 |
| 3 desks, 1 table and miscellaneous office furnishings | Unknown |
| 2 computers | $600.00 |
| 50 acres leased farm land | Unknown |

As to the farm equipment, Debtor and First Farmers have reached an agreement as to the valuation of the Debtor's Farm Equipment. Under this agreement, the value of Debtor's farm equipment, which is subject to First Farmers' first priority lien, is $370,000.00. Debtor believes that in a liquidation, considering short-term sale and costs of sale that the sale of the farm equipment would likely result in liquidation proceeds of fifty to sixty percent (50% - 60%) of this value or approximately $200,000.00. First Farmers has a lien on this farm equipment securing its claim.

The two computers, three desks, one table and miscellaneous office furnishings are believed to have *de minimis* value and in a hypothetical liquidation would likely result in proceeds of not more than $500.00.

The 50 acres of leased farm land scheduled by the Debtor consisted of a corn crop that was growing in the field at the commencement of the case. This crop has since been harvested for silage for use at the dairy. This 50 acre corn crop on land rented from Robert Linn was valued together with the 16.5 acres corn crop on Debtor's tillable land at a value of $37,320.61 in the Settlement Agreement between Debtor and First Farmers subject of the Motion to Approve Settlement Agreement referenced above. As such those proceeds are part of and included in the Collateral Agreement above-referenced and subject of the Motion to Distribute Loan Proceeds.

The 2003 skidloader was subject of a purchase money security interest of Renovations, Inc. securing its claim of approximately $12,000.00. Debtor scheduled the value of the skidloader at $12,000.00. In a hypothetical liquidation, Debtor believes the proceeds from the sale of that asset would likely yield fifty to sixty percent (50% - 60%) of the scheduled value or approximately $6,600.00. The proceeds from the sale of the skidloader in a hypothetical liquidation would be paid to Renovations, Inc. on account of its purchase money security interest.

First Farmers asserts a first priority lien on all of the assets of the Debtor. As above noted, there is presently a dispute about the Collateral Account. Debtor maintains that claims incurred by the Receiver have priority over the interest of First Farmers as to the Collateral Account. First Farmers disagrees and believes it has a first lien on the Collateral Account. Additionally, the 2003 Skidloader is subject to a purchase money security interest of Renovations, Inc. as to its secured claim of $12,000.00.

In a hypothetical liquidation, all proceeds would be paid to secured creditors whether solely to First Farmers or those entities listed in the Debtor's Motion to Distribute Loan Proceeds with remainder thereafter paid to First Farmers on account of lien interest. Since the liquidation value of all assets is less than the secured claims, there would be insufficient funds available for any distribution to general unsecured creditors in a hypothetical liquidation.

In a liquidation, pursuant to the operation of the Bankruptcy Code, certain creditors are entitled to payment prior to distribution to general unsecured creditors. These claims include certain administrative and priority claims.

Administrative Expenses: Certain entities, including Debtor's attorneys, accountants, appraisers, or other professionals authorized to be employed by the Debtor and professionals employed by the Unsecured Creditors' Committee, if any, may file Applications with the Bankruptcy Court for the allowance of compensation and reimbursement of expenses. Requests for compensation are subject to approval by the Bankruptcy Court after a hearing on notice at which the Debtor and other parties in interest may participate and, if appropriate, object to the allowance of any compensation and reimbursement of expenses. Attorney fees are not known at present, but are estimated to be $155,210.99 at Confirmation. This amount may be greater or

lesser depending upon matters involved in the chapter 11 proceeding, including issues relating to claims and the confirmation of the Plan. Additional administrative expenses would include U.S. Trustee fees unsatisfied at the time of the Plan Confirmation, which at this time are estimated to be $650.00. U.S. Trustee fees continue to accrue until the case is closed.

Priority Claims: Certain claims, including certain wage claims and government taxing authority claims are entitled to a priority position over general unsecured creditors. The Bankruptcy Code requires payment of these priority claims before distribution to general unsecured creditors or interest holders. As above set forth, priority wage and tax claims total approximately $26,176.89. Debtor believes there may be some adjustment to the priority claim amounts.

Administrative and priority claims (if any) would be entitled to payment prior to payment to general unsecured creditors.

### D.  Projections

The Debtor has in accordance with its experience and expertise, formulated projections of income and expenses for the continued operation of the dairy farm facility.

These projections, based upon the Debtor's most current information reflect the present opinion of the income to be generated by the operation of the dairy farm facility. Debtor has assessed the expected income and associated costs and expenses of operating and maintaining the dairy farm and the aspects of maintaining its operation incidental thereto.

The projections, attached hereto as **Exhibit A**, provide information on the continued operation of the Debtor based upon its experience, current information, and opinion regarding anticipated income and expenses from the operation of the dairy farm. It is cautioned that no representation can be made with respect to the accuracy of these projections or the ability to achieve the projected results. Certain of the business assumptions used in the preparation of the projections may not materialize. The conclusions described herein are subject to numerous assumptions regarding a number of factors associated with the operation of the dairy farm facility. Debtor's projections include projected amounts of revenue generated from the production of milk and the price thereof. The projection of production amounts and milk pricing are variable elements contained in the projections. Additionally, costs associated with the operation of the dairy farm facility are projected which include projections for feed costs which amounts can vary. Moreover, unanticipated and uncontrollable events and circumstances may occur after the date of the forecast which would effect the operation of the dairy farm facility and expected revenue to be generated therefrom. The financial information set forth herewith should be viewed in conjunction with other information regarding the Debtor's business and operation and with such other information contained elsewhere in this Disclosure Statement. This information contains forward looking statements. Accordingly, although the Debtor believes these projected results are achievable, actual results achieved during the period covered by the projections will undoubtedly vary from the projections and such variations may be material.

### *E. Risk Factors*

Operational issues pose risk factors for the Debtor's projected revenue and income from the operation of the dairy farm. For example, commodity pricing and operating costs can effect the operation of the dairy and as such may in the future materially effect the ability of the Debtor to maintain payments as required of the Debtor under the Plan proposed. These commodity pricing and operating cost risks include such factors as the price of milk as well as expenses associated with the operation of the dairy including fuel and feed pricing, especially the price of corn as well as additional input expenses such as haylage. Weather can play a factor in the productivity of the dairy as well as impact upon crop production and associated commodity and feed pricing. As such, unanticipated and uncontrollable events related to the continued operation of the facility as contemplated by the Plan pose potential risk factors for Debtor's ability to maintain plan payments as anticipated under its Plan.

### III.

### *Bankruptcy Code Requirements for Confirmation*

The Bankruptcy Court will confirm the Plan only if it finds that all of the requirements of §1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a Plan are that the Plan: (i) is accepted by all impaired classes of claims and equity interests, or if rejected or deemed rejected by an impaired Class, satisfies the "cramdown" standard; (ii) is feasible; and (iii) is in the "best interests" of creditors and stockholders (interest holders) impaired under the Plan.

Section 1129 of the Bankruptcy Code which sets forth the requirements that must be satisfied in order for the Plan to be confirmed, lists the following requirements for the approval of any plan of reorganization:

1. A plan must comply with the applicable provisions of the Bankruptcy Code.

2. The proponent of a plan must comply with the applicable provisions of the Bankruptcy Code.

3. A plan must be proposed in good faith and not by any means forbidden by law.

4. Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, or in connection with such plan and incident to the case, must be approved by, or be subject to the approval of, the court as reasonable.

5. (i)(A) The proponent of a plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation

of such plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan and the Debtor, or a successor to the Debtor under such plan; and

(B)    The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy; and

(ii)    The proponent of a plan must disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for each insider.

6.    Any governmental, regulatory commission with jurisdiction, after confirmation of a plan, over the rates of the debtor must approve any rate change provided for in such plan, or such rate change is expressly conditioned on such approval.

7.    Each holder of a claim or interest in an impaired class of claims or interests must have accepted the plan or must receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date, or, if the class is a class of secured claims that elects non-recourse treatment of the claims under §1111(b) of the Bankruptcy Code, each holder of a claim in such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  This is the so-called "best interests" test.

8.    With respect to each class of claims or interests, such class must accept the plan or not be impaired under the plan (subject to the "cramdown" provisions discussed herein.)

9.    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, a plan must provide that:

(i)    with respect to an administrative claim and certain claims arising in an involuntary case, on the effective date of the plan, the holder of the claim will receive on account of such claim cash equal to the allowed amount of the claim;

(ii)    with respect to a class of priority wage, employee benefit, consumer deposit and certain other claims described in §507(a)(3)-(6) of the Bankruptcy Code, each holder of a claim of such class will receive

      (A)     if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

      (B)     if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

      (iii)     with respect to a priority tax claim of a kind specified in §507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding five (5) years after the date of the order for relief, of a value, as of the date of assessment of such claim of a value, as of the effective date of the plan equal to the allowed amount of such claim, and such treatment must be in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plain (other than cash payments made to a class of creditors under §1122(b)).

10.     If a class of claims is impaired under a plan, at least one class of claims that is impaired under such plan must have accepted the plan, determined without including any acceptance of the plan by any insider; except that in a case in which the debtor is an individual, the debtor may retain property included in the estate subject to the requirements of 11 U.S.C. §1129(a)(14) described in ¶15 below.

11.     Confirmation of a plan must not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan unless such liquidation or reorganization is proposed in the plan.  This is the so-called "feasibility" requirement.

12.     All fees payable under §1930 of the Bankruptcy Code, as determined by the court at the hearing on confirmation of the plan, must have been paid or the plan must provide for the payment of all such fees on the effective date of the plan.

13.     A plan must provide for the continuation after its effective date of payment of all retiree benefits, as that term is defined in §1114 of the Bankruptcy Code, at the level established pursuant to either subsection (e)(1)(B) or (g) of §1114 of the Bankruptcy Code, at any time prior to confirmation of such plan, for the duration of the period the debtor has obligated itself to provide such benefits.

14.     An individual debtor may not obtain confirmation unless post-petition domestic support obligations are paid in full.

15.    In those chapter 11 cases in which the debtor is an individual, and in which the holder of an allowed unsecured claim objects to the confirmation of the Plan, the court will confirm the Plan only if the value, as of the effective date of the Plan, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the Plan is not less than the projected disposable income of the debtor (as defined in 11 U.S.C. §1325(b)(2) to be received during the five (5) year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

This Disclosure Statement discusses three of these requirements: (a) the feasibility of the Plan; (b) acceptance by impaired classes; and (c) the "best interests" standard. The Debtor believes that the Plan meets all the requirements of §1129(a) of the Bankruptcy Code (other than as to voting, which has not taken place) and will seek a ruling of the Court to this effect at the hearing on confirmation of the Plan. You are urged to consult your own attorneys to evaluate each of the standards for confirmation of the Plan under the Bankruptcy Code.

### *Vote Required for Acceptance; Confirmation*

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots (other than any holders who are found by the Bankruptcy Court to have cast their ballots in bad faith). The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots other than any holders who are found by the Bankruptcy Court to have cast their ballots in bad faith.

In addition to this voting requirement, §1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the plan otherwise be found by the Court to be in the best interests of each holder of a claim or interest in an impaired class. See "Best Interests Test" below.

If one Class of impaired Claims or Interests accepts the Plan, the Court may confirm the Plan under the "cramdown" provisions of §1129(b) of the Bankruptcy Code, which permits the confirmation of a plan over the dissenting votes of creditors or equity interest holders that have voted, as a Class, to reject the plan, provided that certain standards are met. See "Cramdown" below.

In the event any Voting Class votes against the Plan, and the Plan is not withdrawn, the terms of the Plan may be modified by the Debtor, as necessary to effect a "cramdown" on such dissenting Class or Classes by reallocating value from all Classes Junior to the objecting Class or Classes to any impaired senior Classes until such impaired senior Classes are paid in accordance with the absolute priority rule of §1129(b) of the Bankruptcy Code. Any such modifications or

amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the hearing on the confirmation of the affected Plan.  Subject to the conditions set forth in the Plan, a determination by the Bankruptcy Court that the Plan is not confirmable pursuant to §1129 of the Bankruptcy Code will not limit or affect the Debtor's ability to modify the Plan to satisfy the provisions of §1129 of the Bankruptcy Code.

### ***Best Interests Test***

Notwithstanding acceptance of the Plan by each impaired Class, in order to confirm the Plan the Bankruptcy Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest that has not accepted the Plan.  Accordingly, if an impaired Class does not unanimously accept the Plan, the "best interests" test of §1129(a)(7) of the Bankruptcy Code requires that the Court find that the Plan provides to each Holder of a claim or interest in such impaired Class a recovery on account of the Holder's Claim or Interest that has a value of at least equal to the value of the Distribution that each such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

To estimate what members of each impaired Class of Claims or Interests would receive if the Debtor were liquidated in a chapter 7 case, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Debtor's case were converted to a chapter 7 liquidation by a chapter 7 trustee (the "Liquidation Value").  The Liquidation Value would consist of the net proceeds from the disposition of the assets of the Debtor, augmented by the Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case including sale costs. Debtor believes that a chapter 7 liquidation would have a material and adverse effect upon the values which would be received by its creditors when measured against such values assuming consummation of the Plan.

The Liquidation Value available to general creditor would be reduced by: (a) the Claims of secured creditors to the extent of the value of their collateral; and (b) the costs and expenses of the liquidation under chapter 7, which would include: (i) the compensation of a trustee and its counsel and other professionals retained; (ii) disposition expenses; (iii) all unpaid expenses incurred by the Debtor during its Reorganization Case (such as compensation for attorneys, auctioneers and accountants) which are allowed in the chapter 7 case; (iv) litigation costs; and (v) Claims arising from the operation of the Debtor during the pendency of the chapter 11 and chapter 7 liquidation cases.  The liquidation itself would cause the realization of additional Priority Claims and would accelerate other priority payments which would otherwise be payable in the ordinary course.  These Priority Claims would be paid in full out of the liquidation proceeds before the balance would be made available to pay most other Claims or to make any Distribution in respect of Interests.  A discussion concerning liquidation of the Debtor's assets is set forth above, See II.C. Liquidation Analysis.

Once the percentage liquidation recoveries for each Class are ascertained, the value of the Distribution available out of the Liquidation Value is compared with the value of the property offered to such Class under the Plan to determine if it is in the best interests of Holders of Allowed Claims or Allowed Interests, as the case may be, in such Class.

After considering the effect that a chapter 7 liquidation would have on the value of the Debtor, including the costs of an Claims resulting from a chapter 7 liquidation, the adverse effect of a forced sale on the prices of the Debtor's assets, the potentially adverse impact on the Debtor's business and the delay in the distribution of liquidation proceeds, the Debtor has determined estimated Liquidation Values for its Reorganization Case, which are set forth above. Based on the analysis set forth therein, and subject to the assumptions and qualifications therein expressed, the Debtor believes that the Plan as proposed herein satisfies the requirements of the "best interests" test of §1129(a)(7) of the Bankruptcy Code.

### *Fair and Equitable Test; Cramdown*

Any Voting Class that fails to accept the Plan will be deemed to have rejected the Plan. Notwithstanding such rejections, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if the Debtor demonstrates to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to for its claims or interests.

The Bankruptcy Code establishes different "fair and equitable" tests for the secured and unsecured creditors as follows:

1.  Secured Creditors. Either (i) each secured creditor in a non-accepting impaired class retains the liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each secured creditor in a non-accepting impaired class realizes the indubitable equivalent of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds and the treatment of such liens on proceeds as provided in clause (i) or (ii) of this subparagraph.

2.  Unsecured Creditors. Either (i) each unsecured creditor in a non-accepting impaired class receives or retains under the plan property having a present value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the Plan, unless new value is given by and through the operation of the Chapter 11 Plan; additionally, with respect to those cases in which the Debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the Plan, the court will confirm the Plan only if the value, as of the effective date of the Plan, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the Plan is not

less than the projected disposable income of the debtor (as defined in 11 U.S.C. §1325(b)(2) to be received during the five (5) year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

THE DEBTOR BELIEVES THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY WITH RESPECT TO ANY CLASS AND IS FAIR AND EQUITABLE WITH RESPECT TO EACH IMPAIRED CLASS, THEREFORE, THE DEBTOR INTENDS TO SEEK CONFIRMATION OF THE PLAN EVEN IF LESS THAN THE REQUISITE NUMBER OF FAVORABLE VOTES ARE OBTAINED FROM ANY VOTING CLASS.

### *Feasibility*

The Bankruptcy Code requires that the Bankruptcy Court, in order to confirm the Plan must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test"). For the Plan to meet the Feasibility Test, the Bankruptcy Court must find that reorganized Debtor, subsequent to the Effective Date, will have a reasonable expectation of generating, through their own operations or access to sources of debt and/or equity capital, funds sufficient to satisfy their obligations under the Plan and otherwise.

Assuming consummation of the Plan substantially as described herein, the Debtor believes that the Plan meets the requirements of the Feasibility Test. The Debtor has prepared projections of the expected operating and financial results of reorganized Debtor. Based on those projections, Debtor believes that the Plan complies with the financial feasibility standard for confirmation. The Debtor believes the results set forth in these projections are attainable and that it will have sufficient funds to meet its obligations under the Plan and otherwise.

The Debtor cautions that no representations can be made with respect to the accuracy of these projections or the ability to achieve the projected results. Certain of the business assumptions used in the preparation of the Projections may not materialize. The conclusions described herein are subject to numerous assumptions regarding continuing operations, many of which are the subject of continuing review and modification. Moreover, unanticipated and uncontrollable events and circumstances may occur after the date of the forecasts which could affect the business and property. Accordingly, although the Debtor believes that these projected results are achievable, actual results achieved during the period covered by the Projections will undoubtedly vary from the Projections, and such variations may be material.

### *IV.*

### *Legal Effect of Plan Confirmation*

1.     <u>As to Cases Other than Individual Debtors</u>. In cases in which the Debtor is not an individual, except as otherwise provided in the Plan or Confirmation Order, in accordance with §1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge

effective as of the effective date of all debts of, claims against, liens on, and interest in the Debtor, *their* assets or properties which debts, claims, liens and interest arose at any time before the entry of the Confirmation Order.

2.      As to cases in which Debtor is an Individual. Unless after notice and hearing the Court orders otherwise for cause, confirmation of an individual Debtor's Chapter 11 Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan under 11 U.S.C. §1141(d)(5)(A) except that the Court may grant a discharge prior to Plan completion under sub-part (b) of that Section if there exists a lack of practical ability to modify the confirmed Plan and the distribution of all property under the Plan is no less than unsecured creditors would have received in a chapter 7 liquidation.

3.      Scope of Discharge. The discharge of the Debtor shall be effective as to each claim, regardless of whether a Proof of Claim therefor was filed, whether the claim is an allowed claim or whether the holder thereof votes to accept the Plan.  On the effective date as to every discharge claim and interest any holder of such claim or interest shall be precluded from asserting against the reorganized Debtor or against *their* respective assets or properties any other or further claim or interest based upon any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Confirmation date.  Further, any holder of a claim or interest shall be precluded from asserting the same against the Debtor or the reorganized Debtor, except as specifically provided for in the Plan.

4.      Injunction.  In accordance with §524 of the Bankruptcy Code, the discharge provided by the Plan and §1141 of the Bankruptcy Code, *inter alia* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the claims discharged hereby.

5.      Applicability.  Except as otherwise may be set forth in the Plan, the discharge provisions of the Plan do not apply to rights, claims or causes of action whether asserted or yet to be asserted against a non-Debtor except that no rights, claims or causes of action against Debtor can be asserted against the Debtor or reorganized Debtor.

6.      Retention of Claims.  Except as otherwise provided in the Plan including without limitation any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Bankruptcy Court in accordance with §1123(b) of the Bankruptcy Code, the reorganized Debtor shall retain and may enforce any claims, rights and causes of action that the Debtor or its estate may hold including without limitation any claims, rights or causes of action under §544 through §550 inclusive of the Bankruptcy Code or any other applicable law.  After the effective date, reorganized Debtor may pursue any such claims, rights and causes of action in accordance with what is in their best interest.

7.      Revesting and Vesting.  Except as otherwise provided expressly in the Plan, on the effective date, all property comprising the estate of the Debtor shall revest in reorganized Debtor and shall become property of the reorganized Debtor free and clear of all claims, liens, charges, encumbrances and interests of creditors and equity security holders (other than as expressly provided in the Plan).  As of the effective date reorganized Debtor shall operate the

business and use, acquire and dispose of property including any post-petition cash collateral and settle or compromise claims or interests without supervision of the Court free of any restrictions of the Bankruptcy Code or Bankruptcy Rules other than those restrictions expressly imposed by the Plan and Confirmation Order.

       8.    <u>Retention of Jurisdiction by the Bankruptcy Court</u>. Notwithstanding Confirmation of the Plan or occurrence of the effective date, the Court shall retain jurisdiction over the reorganization case.  Prior to the entry of a Final Order pursuant to Bankruptcy Rule 3022, the Bankruptcy Court shall retain jurisdiction:

a.    Over all claims against or interests in the Debtor;

b.    To determine the allocability of claims and interests upon objection to such claims by the Debtor or reorganized Debtor or the Creditors' Committee;

c.    To determine any tax liability pursuant to §505 of the Bankruptcy Code;

d.    To adjudicate any dispute under any executory lease or contract assumed during the reorganization case pursuant to §365 of the Bankruptcy Code;

e.    To resolve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor;

f.    To determine requests for payment of administrative claims;

g.    To resolve controversies and disputes regarding the interpretation of the Plan including the determination of the priorities of distribution required by the Articles of the Plan.

h.    To implement the provisions of the Plan and enter orders in aid of Confirmation in consummation of the Plan including without limitation, appropriate orders to enforce the right, title and powers of reorganized Debtor from actions by holders of claims against or interests in the Debtor;

i.    To determine classification voting treatment allowance estimation withdrawal disallowance or reconsideration of claims and interests and any objections relating thereto;

j.    To fix, liquidate or estimate claims or interests;

k.    To modify the Plan pursuant to §1127 of the Bankruptcy Code;

l.      To correct any defect, to cure any mistake or omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of the Plan;

m.      To adjudicate any causes of action that arose prior to the Confirmation date or in connection with the implementation of the Plan including avoidance actions brought by the Debtor or reorganized Debtor as the representation of Debtor's estate or party in interest (as a representative of the Debtor's estate);

n.      To resolve disputes concerning any disputed claims reserve or the administration thereof and claims for disputed distribution;

o.      To resolve any disputes concerning any release of the Debtor under the Plan or the injunction against acts of employment of process, or actions against the Debtor arising under the Plan;

p.      To resolve any disputes concerning whether a personal entity had sufficient notice of the reorganization case, the applicable claims bar date, the hearing on the approval of the disclosure statement as containing adequate information, the hearing on the Confirmation of the Plan for the purpose of determining whether a claim of interest is discharged under the Plan or for any other purpose;

q.      To order the removal pursuant to §1452 of Title 28 of the United States Code of any suit instituted against the Debtor, the estate, the reorganized Debtor or any person released pursuant to the Plan and to hear and determine any action so removed;

r.      To enter a Final order closing the reorganization case; and

s.      To hear and determine such other matters as may be provided for under Title 28 or any other title of the United States Code and any reference to the Bankruptcy Code, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Plan or the Confirmation Order.

### IV.

### *Summary of the Plan*

The Classes created by the Plan and their respective treatment are summarized below. The obligations under the Plan may be reduced to promissory notes within approximately six (6) months from the date of Confirmation of the Plan. The terms of such promissory notes shall not vary the terms of the Plan.

1.    **_Class 1_** will constitute holders of administrative expense claims, including Debtor's attorneys. This Class will be paid in full within thirty (30) days after Confirmation unless earlier payment is authorized by the Court. The U.S. Trustee fees shall be paid in full in timely fashion pursuant to the quarterly fee payments schedule until such time as this chapter 11 case is closed. This Class also includes claims allowed and ordered to be paid after application and notice to creditors pursuant to 11 U.S.C. §503(b)(9). This Class is not impaired.

2.    **_Class 2_** shall consist of the Allowed Priority Wage Claims pursuant to 11 U.S.C. §507(a)(4). This Class will be paid in full upon Confirmation of the Plan. This Class is not impaired. The sole claim in this Class in in the amount of $12,850.00.

3.    **_Class 3_** shall consist of the Allowed Priority Tax Claims pursuant to 11 U.S.C. §507(a)(8). This Class will be paid in full upon Confirmation of the Plan. This Class is not impaired. The priority claims filed consist of $1,293.17 to the Ohio Department of Taxation and $12,033.72 to the Department of the Treasury – Internal Revenue Service.

4.    **_Class 4_** shall consist of the First Farmers Bank and Trust Company Allowed Secured Claim. This Class is impaired. This Class shall be paid in full pursuant to the terms of the two (2) Promissory Notes referenced and set forth in the parties' Stipulation Regarding Adequate Protection, Plan Treatment and Guaranty Recitals. By way of summary here and not as any limitation, said Notes provide, _inter alia_:

    a.    A $370,000.00 Note secured by a lien on the Debtor's equipment payable in monthly installments based upon a five (5) year amortization with interest at the fixed rate of five percent (5.0%) per annum in the amount of $6,992.74 each, beginning January 31, 2017, and on the last day of each month thereafter. A final payment of the entire unpaid balance of Principal and interest will be due December 31, 2021; and

    b.    A $5,500,000 Note secured by a lien on the Debtor's real estate payable in monthly instalments based on a twenty (20) year amortization with interest at the fixed rate of five percent (5.0%) per annum, with a seven (7) year balloon payment provision. Said (83) monthly payments on this Note are $36,508.96 beginning on January 31, 2017, and on the last day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due December 31, 2023.

    c.    Said Notes are further to be guaranteed by United Dairy Group, LLC.

Accordingly, the monthly payments (formerly denominated "adequate protection") to this Class are to continue uninterrupted upon Confirmation of the Plan. The deficiency claim of First Farmers Bank and Trust Company shall be included in, and administered with, Class 8.

5.    _Class 5_ shall consist of the United Dairy Group LLC Allowed Secured Claim. This Class is impaired. The Secured Claim of this Class in the amount of $5,250,000.00 and shall be treated as follows:

a.    The sum of $500,000.00 of such Secured Claim shall be converted to a fifty percent (50.0%) equity interest in the Debtor upon Confirmation of the Plan.

b.    The sum of $500,000.00 of such Secured Claim shall be credited by United Dairy Group, LLC as the new value contribution for John Glessner for his fifty percent (50.0%) ownership in the post-Confirmation membership interest in the newly-reorganized Debtor upon Confirmation of the Plan.

c.    The sum of $4,250,000.00 shall be paid, With Interest. Payments shall be interest only until such time that the balance on unpaid corn silage is fully paid. Thereafter payments shall include principal and interest in the amounts and intervals to be agreed by the parties. The pre-Confirmation security interest of this Class shall continue in effect.

6.    _Class 6_ shall consist of the Mercer County Treasurer Allowed Secured Claim. The Allowed prepetition claim of this Class shall be paid in full, With Interest. All prepetition tax arrearages, if any, shall be cured within one (1) year after Confirmation of the Plan. All post-petition taxes owing to this Class shall be timely paid as and when due. The security interest of this Class shall continue in effect. This Class is impaired. The real estate taxes owing to this Class are believed to be current.

7.    _Class 7_ shall consist of the Renovations, Inc. Allowed Secured Claim. This Class shall be paid in full, With Interest, in monthly installments based upon a five (5) year amortization. Said monthly installments shall commence thirty (30) days after Confirmation of the Plan. The security interest of this Class shall continue in effect. The estimated monthly payment to this Class are $223.46. This Class is impaired.

8.    _Class 8_ shall consist of the Unsecured, Non-priority Claims. This Class shall consist of all claims which are not specifically included in Classes 1 through 7. This Class shall include, but not by way of limitation, the deficiency claims of First Farmers Bank and Trust Company, Homan, Inc., Buschur's Feeds, etc. This Class shall be paid the sum of $5,000.00 per year for five (5) consecutive years commencing with the first installment which shall be due ninety (90) days after Confirmation of the Plan. The annual payments to this Class shall be distributed to the Allowed Claims of this Class on a pro rata basis. This Class shall neither have, nor retain, any liens or security interests of any kind. This Class is impaired.

9.     *Class 9* shall consist of the Interest Holders.  This Class shall neither retain nor receive anything on account of its prepetition equity security interests in the Debtor.  All prepetition equity security interests in the Debtor shall be cancelled and the equity security interests in the newly-reorganized Debtor shall be issued as provided in *Article V. Means for Execution of Plan* of the Plan.  In summary, Article III. provides that fifty percent (50.0%) of the membership interest shall be issued to United Dairy Group, LLC for $500,000.00 and fifty percent (50.0%) of the membership interest shall be issued to John Glessner for the sum of $500,000.00.  United Dairy Group, LLC and John Glessner will enter into an agreement for their management of the dairy.

**THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES.  CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN.**

\*\*\*\*\*\*\*\*

**ADDITIONALLY, ANY CREDITOR DESIRING INFORMATION REGARDING THE DEBTOR THAT SUCH CREDITOR BELIEVES IS NOT SUPPLIED BY THE DISCLOSURE STATEMENT IS REQUESTED TO CONTACT THE ATTORNEYS FOR THE DEBTOR.**

HEARTLAND DAIRY HOLDINGS LLC


/s/ John W. Glessner
John W. Glessner, Member

## <u>CERTFICATE OF SERVICE</u>

The undersigned, who is duly admitted to practice in the State of Indiana and before the Court, hereby certifies that a copy of the above and foregoing was transmitted electronically through the Bankruptcy Court's ECF System, on March 3, 2017, to the following:

Leonard W. Copeland
Nancy J. Gargula
Office of the United States Trustee
One Michiana Square, Suite 555
100 E. Wayne Street
South Bend, IN 46601

Mark A. Warsco
ROTHBERG LOGAN & WARSCO LLP
505 E. Washington Street
PO Box 11647
Fort Wayne, IN 46859-1647
Attorney for First Farmers Bank & Trust Co.

David P. Pierce
Patricia J. Friesinger
COOLIDGE WALL CO., LPA
33 West First Street, Suite 200
Dayton, OH 45402-1289
Attorneys for First Farmers Bank & Trust Co.

Mark R. Wenzel
Martha R. Lehman
SMITHAMUNDSEN LLC
Capital Center, South Tower
201 North Illinois Street, Suite 1400
Indianapolis, IN 46204
Attorney for Buschur's Unlimited, Inc.
dba Buscher Feeds

The undersigned further certifies that a copy of the above and foregoing was sent by first class United States mail, postage prepaid on March 3, 2017, to the following:

Heartland Dairy Holdings LLC
c/o John W. Glessner, Member
6430 E. Star Valley Street
Mesa, AZ 85215

/s/ Scot T. Skekloff
Scot T. Skekloff (#15849-02)

## Cash Flow Projections Heartland Dairy

| | per cow/day | ACTUALS 2016 31-Dec | OUTLOOK 2017 31-Jan | OUTLOOK 2017 28-Feb | OUTLOOK 2017 31-Mar | OUTLOOK 2017 30-Apr | OUTLOOK 2017 31-May | OUTLOOK 2017 30-Jun | OUTLOOK 2017 31-Jul | OUTLOOK 2017 31-Aug | OUTLOOK 2017 30-Sep | OUTLOOK 2017 31-Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Days in period | | 31 | 31 | 28 | 31 | 30 | 31 | 30 | 31 | 31 | 30 | 31 |
| Lactating Cows | | 820 | 756 | 745 | 934 | 1121 | 1306 | 1532 | 1747 | 1800 | 1852 | 1727 |
| Dry Cows | | 80 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Total Herd** | | **900** | **881** | **870** | **1059** | **1246** | **1431** | **1657** | **1872** | **1925** | **1977** | **2027** |
| Culling % | 50% | 25% | 25% | 15% | 15% | 15% | 15% | 20% | 20% | 25% | 30% | 35% |
| Total Culled | | | 19 | 11 | 16 | 13 | 16 | 24 | 35 | 47 | 48 | 58 |
| Purchased Heifers | | 0 | 200 | 200 | 200 | 200 | 200 | 250 | 250 | 100 | 100 | |
| Heifer Calves Sold | | 63 | 63 | 63 | 63 | 63 | 63 | 63 | 63 | 100 | 150 | 108 |
| Bull Calves Sold | | 50 | 50 | 72 | 72 | 72 | 72 | 72 | 74 | 63 | 120 | 150 |
| # Milk per cow/day | 40% | 74 | 74 | 72 | 72 | 72 | 72 | 72 | 74 | 74 | 74 | 120 |
| Total CWT | | 205516 | 173748 | 154441 | 208551 | 242161 | 249140 | 291408 | 433018 | 431301 | 412101 | 396281 |
| | | | | | | | | | | | | |
| **Milk Revenues** | | **310,198** | **308,107** | **273,310** | **378,307** | **447,997** | **542,580** | **621,991** | **821,057** | **820,340** | **820,340** | **786,119** |
| Milk Price | | 15.12 | 17.76 | 17.70 | 18.14 | 18.50 | 18.62 | 18.80 | 19.35 | 19.88 | 19.95 | 19.84 |
| | | | | | | | | | | | | |
| **Cash Flow** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Milk | | 310,198 | 308,107 | 273,310 | 378,307 | 447,997 | 542,580 | 621,991 | 821,057 | 820,340 | 820,340 | 786,119 |
| Livestock | | 6,350 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 20,000 | 20,000 | 20,000 | 20,000 | 48,000 |
| Cull Cows | | 5,727 | 8,702 | 8,702 | 8,702 | 10,594 | 12,461 | 19,074 | 27,612 | 37,444 | 38,508 | 46,136 |
| | | | | | | | | | | | | |
| **Cash Income** | | **322,275** | **340,607** | **299,623** | **404,509** | **476,091** | **575,041** | **661,065** | **823,166** | **878,500** | **878,847** | **880,255** |
| | | | | | | | | | | | | |
| Fresh Heifer Prices | | 1,800 | 1,800 | 1,800 | 1,850 | 1,850 | 1,850 | 1,900 | 1,900 | 1,900 | 1,900 | 1,850 |
| Total $ new heifers | | | 33,750 | 33,750 | 19,828 | 370,000 | 370,000 | 475,000 | 475,000 | 190,000 | 190,000 | 199,389 |
| Cull Cow $ per cow | 0.21 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Cull cow replacement | 6.00 | 5,727 | 15,000 | 5,117 | 8,813 | 8,702 | 10,594 | 12,461 | 19,074 | 27,612 | 37,444 | 159,189 |
| Heifer calf $ per calf | | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Bull calf $ per calf | | 100 | 100 | 100 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Total revenue Cull Cows | | 3,820 | 12,500 | 12,183 | 16,420 | 18,692 | 22,173 | 24,850 | 29,019 | 29,843 | 29,659 | 30,000 |
| Total revenue HC | | 2,530 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 7,500 | 7,500 | 7,500 | 7,500 | 18,000 |
| Total revenue BC | | 6,350 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 20,000 | 20,000 | 20,000 | 20,000 | 48,000 |
| Total Livestock revenues | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Cash Flow Expenses** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Animal Health | 0.50 | 13,262 | 13,659 | 12,183 | 16,420 | 18,692 | 22,173 | 24,850 | 29,019 | 29,843 | 29,659 | 31,422 |
| Breeding Expense | 0.12 | 19,614 | 3,278 | 2,924 | 3,941 | 4,486 | 5,322 | 5,964 | 6,965 | 7,162 | 7,118 | 7,541 |
| Manure Application | | 5,116 | | | | | | | | | | |
| Miscellaneous | | 40,800 | 33,750 | | 20,124 | 24,498 | | 45,300 | 65,578 | 88,929 | 91,455 | 105,689 |
| Cull cow replacement | 6.00 | 190,378 | 126,913 | 19,828 | | | 50,000 | | | | | 377,827 |
| Feed | 6.00 | 190,378 | 126,913 | 192,450 | 340,633 | 340,633 | 296,920 | 340,276 | 368,670 | 384,670 | 384,670 | 383,827 |
| Fuel | 0.22 | 6,010 | 7,225 | 7,225 | 7,225 | 8,224 | 9,756 | 10,934 | 12,718 | 13,111 | 13,533 | 13,826 |
| Milk Hauling | 0.80 | 20,924 | 21,855 | 19,493 | 26,272 | 29,907 | 35,477 | 39,761 | 46,430 | 47,749 | 47,454 | 50,276 |
| Insurance | 0.13 | 3,830 | 5,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| Labor | | 50,797 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 75,000 | 75,000 | 60,000 | 60,000 | 60,000 |
| Management Fees | | 23,604 | 8,800 | 8,800 | 8,800 | 8,800 | 8,800 | 11,000 | 11,000 | 8,800 | 8,800 | 11,000 |
| Marketing and Promotion | 0.21 | 4,924 | 5,737 | 5,117 | 6,896 | 7,851 | 9,313 | 11,188 | 12,534 | 12,188 | 12,455 | 13,197 |
| Miscellaneous | 0.10 | 1,419 | 2,732 | 2,437 | 3,284 | 3,738 | 4,435 | 4,970 | 5,804 | 5,969 | 5,932 | 6,284 |
| Professional Fees | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Repairs and Maintenance | 0.35 | 15,281 | 9,552 | 8,528 | 11,494 | 13,084 | 20,521 | 22,395 | 20,313 | 20,850 | 20,761 | 21,996 |
| Rent/Lease | | 12,955 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Supplies | 0.50 | 16,578 | 13,659 | 12,183 | 16,420 | 18,692 | 22,173 | 24,850 | 24,843 | 24,843 | 24,659 | 74,422 |
| Miscellaneous Expenses | | 1,247 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Real Estate Taxes | | | | | | | | | | | | |
| Utilities | | 14,680 | 15,000 | 38,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Total Cash Expenses** | | **431,661** | **374,655** | **386,554** | **422,417** | **526,772** | **590,567** | **600,968** | **714,809** | **738,471** | **706,747** | **755,220** |
| | | | | | | | | | | | | |
| **Cash from operational activities** | | **(109,387)** | **(34,048)** | **(86,931)** | **(17,908)** | **(50,681)** | **(15,527)** | **60,097** | **108,358** | **140,029** | **172,100** | **125,034** |
| | | | | | | | | | | | | |
| Fresh Heifer Purchases/Lease (not cull) | | | (185,000) | (50,000) | (349,876) | (345,000) | (341,184) | (439,700) | (409,422) | (101,071) | (98,545) | (92,500) |
| Investment sanitiser | | | (11,000) | | | | | (25,000) | (25,000) | | | |
| Investment repair sheeting/freestalls | | | (38,000) | | | | | | | | | |
| Investment repair curtains | | | | | | | | | | | | |
| Other investments | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Cash from investment activities** | | **-** | **(234,000)** | **(50,000)** | **(399,876)** | **(395,502)** | **(391,184)** | **(454,700)** | **(434,422)** | **(101,071)** | **(98,545)** | **(92,500)** |

**EXHIBIT A**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Conslage debt balance * | $ 671,801 | | 371,801 | 273,801 | 173,801 | 71,801 | (0) | (0) | 671,801 | 671,801 | 671,801 | 671,801 |
| Conslage debt payment | | | (100,000) | (100,000) | (100,000) | (71,801) | | | | | | |
| First Farmers Bank Loan 1: Equipment  Interest | | | (1,438) | (1,417) | (1,545) | (1,473) | (1,427) | (1,450) | (1,426) | (1,357) | (1,378) | |
| First Farmers Bank Loan 1: Equipment  Principal | | | (5,554) | (5,575) | (5,448) | (5,520) | (5,566) | (5,542) | (5,566) | (5,636) | (5,615) | |
| First Farmers Bank Loan 1: Equipment  Interest | | | (21,389) | (21,330) | (23,550) | (22,736) | (23,435) | (22,625) | (23,319) | (23,262) | (23,145) | |
| First Farmers Bank Loan 1: Equipment  Principal | | | (15,120) | (15,179) | (12,959) | (13,773) | (13,074) | (23,339) | (13,247) | (22,457) | (23,145) | |
| First Farmers Bank Loan 1: real Estate  Interest | | | | | | | | (13,884) | (13,247) | (14,052) | (13,364) | |
| First Farmers Bank Loan 2: real Estate  Principal | | | | | | | | (13,190) | | | | |
| Repayment of unsecured chapter 11 creditors | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **UDG DIP LOAN OUTSTANDING incl. unpaid interest** | **1,796,176** | **2,029,551** | 2,029,551 | 2,329,551 | 2,679,551 | 3,229,551 | 3,854,551 | 4,379,551 | 4,854,551 | 4,249,551 | 4,249,551 | 4,249,551 |
| UDG DIP Loan   Interest | | (8,375) | (8,456) | (8,456) | (9,706) | (11,165) | (16,961) | (16,961) | (18,248) | (20,227) | (17,706) | (17,706) |
| UDG DIP Loan   Principal | | 300,000 | 300,000 | 350,000 | 550,000 | 625,000 | 525,000 | 475,000 | 395,000 | | | |
| **Transfer UDG DIP LOAN INTO EQUITY** | | | | | | | | | | | | |
| **Payment to First Farmers; Other assets** | $ - | $ - | $ - | $ - | $ (1,796,176) | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Cash from financial activities** | $ (8,375) | $ 248,042 | $ 198,042 | $ 61,111 | $ (1,399,384) | $ 470,334 | $ 396,241 | $ 415,438 | $ 333,250 | $ (63,729) | $ (61,208) | $ (61,208) |
| **TOTAL CASH FLOW** | $ (317,762) | $ (20,006) | $ (1,817,168) | $ 24,150 | $ (10,469) | $ 20,835 | $ 7,185 | $ (24,771) | $ 12,347 | $ (28,674) | | |
| UDG DIP Loan | | | | | | | | | | 1,000,000 | 1,000,000 | 1,000,000 |
| UDG DIP Loan | | | | | | | | | | | | |
| Opening balance cash | 1,866,701 | 1,846,694 | 1,907,805 | 90,638 | 114,788 | 104,319 | 125,153 | 132,339 | 107,567 | 119,914 | | |
| Closing balance cash | $ 1,866,701 | 1,846,694 | 90,638 | 114,788 | 104,319 | 125,153 | 132,339 | 107,567 | 119,914 | 91,240 | | |
| **Profit & Loss** | | | | | | | | | | | | |
| **Per month** | | | | | | | | | | | | |
| EBITDA | $ (109,387) | (34,048) | (86,931) | (17,908) | (50,681) | (15,527) | 60,097 | 108,358 | 140,029 | 172,100 | 125,034 | |
| Depreciation | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | |
| EBIT | (151,053) | (75,715) | (128,598) | (59,574) | (92,348) | (57,193) | 18,430 | 66,691 | 98,362 | 130,433 | 83,368 | |
| Interest | (8,375) | (31,284) | (31,204) | (34,802) | (35,374) | (38,389) | (40,112) | (43,017) | (44,916) | (41,520) | (42,229) | |
| NET RESULT | $ (159,428) | (106,999) | (159,802) | (94,376) | (127,721) | (95,583) | (21,682) | 23,674 | 53,446 | 88,913 | 41,138 | |
| **Cumulative** | | | | | | | | | | | | |
| EBITDA | | (34,048) | (120,979) | (138,887) | (189,567) | (205,094) | (144,997) | (36,640) | 103,389 | 275,489 | 400,524 | |
| Depreciation | | (41,667) | (83,333) | (125,000) | (166,667) | (208,333) | (250,000) | (291,667) | (333,333) | (375,000) | (416,667) | |
| EBIT | | (75,715) | (204,312) | (263,887) | (356,234) | (413,427) | (394,997) | (328,306) | (229,944) | (99,511) | (16,143) | |
| Interest | | (31,284) | (62,488) | (97,290) | (132,664) | (171,053) | (211,165) | (254,182) | (299,098) | (340,618) | (382,848) | |
| NET RESULT | | (106,999) | (266,800) | (361,176) | (488,898) | (584,480) | (606,162) | (582,489) | (529,042) | (440,129) | (398,991) | |

* Post confirmation credit incurred after August 2017. UDG will provide support for Heartland Dairy to the corn silage vendor in order to receive credit

No repayment of UDG loan during period that Corn Silage supplier has not been repaid.

| | OUTLOOK 2017 30-Nov 30 | OUTLOOK 2017 31-Dec 31 | OUTLOOK 2017 Total year 365 | OUTLOOK 2018 31-Jan 31 | OUTLOOK 2018 28-Feb 28 | OUTLOOK 2018 31-Mar 31 | OUTLOOK 2018 30-Apr 30 | OUTLOOK 2018 31-May 31 | OUTLOOK 2018 30-Jun 30 | OUTLOOK 2018 31-Jul 31 | OUTLOOK 2018 31-Aug 31 | OUTLOOK 2018 30-Sep 30 | OUTLOOK 2018 31-Oct 31 | OUTLOOK 2018 30-Nov 30 | OUTLOOK 2018 31-Dec 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Price | 19.70 | 19.41 | 18.97 | 18.93 | 18.72 | 18.65 | 18.50 | 18.55 | 18.15 | 18.11 | 18.25 | 18.75 | 19.16 | 19.07 | 18.98 |
| | 400 | 400 | | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% |
| | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% |
| | 1,800 | 1,800 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 800 | 800 | | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| | 200 | 200 | 150 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| | 150 | 150 | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| | 40,000 | 40,000 | | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| | 24,000 | 24,000 | | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 |
| | 24,000 | 24,000 | | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 |
| | 64,000 | 64,000 | | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 |
| | 30,784 | 32,197 | | 32,197 | 29,081 | 32,197 | 31,159 | 32,197 | 31,159 | 32,197 | 32,197 | 32,197 | 31,159 | 32,197 | 32,197 |
| | 7,388 | 7,727 | | 7,727 | 6,980 | 7,727 | 7,478 | 7,727 | 7,478 | 7,727 | 7,727 | 7,727 | 7,478 | 7,727 | 7,727 |
| | 106,430 | 107,743 | | 109,055 | 109,055 | 112,085 | 75,000 | 112,085 | 50,000 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 |
| Total | 833,894 | 858,704 | 7,910,301 | 899,874 | 815,784 | 888,227 | 857,165 | 884,068 | 843,076 | 865,765 | 871,589 | 867,228 | 909,441 | 880,109 | 901,954 |
| | 722,592 | 746,818 | 7,244,772 | 787,405 | 703,315 | 775,758 | 744,696 | 771,599 | 730,607 | 753,296 | 759,120 | 754,759 | 796,972 | 767,640 | 789,485 |
| | 75,172 | 88,789 | 566,484 | 126,147 | 42,896 | 111,471 | 23,688 | 41,311 | 44,599 | 51,009 | 78,833 | 108,752 | 132,685 | 105,633 | 123,197 |
| | 15,000 | 15,000 | 180,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| | (45,000) | (45,000) | (2,252,800) | | | | | | | | | | | | |
| | (45,000) | (45,000) | (435,000) | | | | | | | | | | | | |
| | (45,000) | (45,000) | (2,741,800) | | | | | | | | | | | | |

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 671,801 | $ 1,343,602 | $ 1,343,602 | $ 1,243,602 | | | | | | |
| (1,310) | (1,305) | (371,801) | (1,157) | (1,256) | (1,191) | (1,261) | (1,156) | (1,131) | (1,080) | (1,080) | (100,000) | (100,000) | | | | | | |
| (5,682) | (5,669) | (17,051) | (5,737) | (5,787) | (5,902) | (5,850) | (5,877) | (5,982) | (5,853) | (5,913) | (5,564) | (5,564) | | | | | | |
| (23,026) | (23,026) | (66,862) | (5,488) | (5,837) | (22,842) | (21,900) | (21,753) | (22,538) | (21,753) | (22,415) | (21,633) | (83,531) | | | | | | |
| (13,473) | (13,543) | (272,616) | (20,693) | (22,842) | (22,048) | (22,721) | (22,988) | (22,588) | (14,756) | (22,415) | (63,966) | (532,221) | | | | | | |
| (14,167) | (5,000) | (165,482) | (15,816) | (13,667) | (14,461) | (14,579) | (14,279) | (13,911) | (13,970) | (14,094) | (34,876) | (41,025) | | | | | | |
| | | (5,000) | (13,543) | | | (38,924) | (41,988) | (32,118) | (4,210) | (14,756) | (21,633) | (402,649) | | | | | | |
| 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | | | | | | |
| (17,706) | (17,706) | (276,603) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | | | | | | |
| (5,000) | (5,000) | 3,220,000 | | | | | | | | | | (5,000) | | | | | | |
| - | - | - | 37,795 | 102,734 | 84,422 | 134,684 | 97,164 | 77,267 | 100,659 | 90,460 | 108,084 | 155,627 | 227,104 | 171,528 | 130,518 | | | |
| | | (1,796,176) | | | | | | | | | | | | | | | | |
| 1,000,000 | 1,000,000 | 3,220,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | | | | | | |
| (61,208) | (61,198) | 348,410 | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (61,208) | (161,208) | (166,208) | | | | |
| (31,036) | (22,409) | (1,428,905) | 64,939 | (18,312) | 50,263 | (37,520) | (19,897) | 23,391 | (10,199) | 17,624 | 47,543 | 71,476 | (55,575) | (41,011) | | | | |
| 91,240 | 88,789 | 1,866,701 | 126,147 | 42,896 | 111,471 | 23,688 | 41,311 | 84,599 | 51,009 | 78,833 | 108,752 | 132,685 | 105,633 | 125,197 | | | | |
| 60,204 | 37,795 | 37,795 | 84,422 | 1,229 | 69,804 | (17,979) | (355) | 42,933 | 9,343 | 37,166 | 67,085 | 91,018 | 63,966 | 83,531 | | | | |
| | 5,660 | 401,784 | 42,501 | (39,556) | 81,804 | 40,799 | (40,779) | (41,461) | (41,461) | 67,085 | 155,627 | 227,104 | | | | | | |
| 475,695 | 564,484 | 564,484 | 126,147 | 280,514 | 304,202 | 345,513 | 430,112 | 481,122 | 559,954 | 668,706 | 801,390 | 907,023 | 1,032,221 | | | | | |
| (493,333) | (500,000) | (500,000) | (41,667) | (125,000) | (166,667) | (208,333) | (250,000) | (291,667) | (333,333) | (375,000) | (416,667) | (458,333) | (500,000) | | | | | |
| 17,162 | 64,484 | 64,484 | 84,480 | 155,514 | 137,535 | 137,180 | 180,112 | 189,455 | 226,621 | 293,706 | 384,724 | 448,690 | 532,221 | | | | | |
| (24,207) | (42,062) | (466,269) | 85,710 | 83,333 | 69,804 | 41,633 | 2,153 | (41,667) | 37,166 | 67,085 | 91,018 | 63,966 | 83,531 | | | | | |
| (466,269) | (466,269) | (401,784) | (81,580) | (123,393) | (164,285) | (205,917) | (246,697) | (288,158) | (325,333) | (370,063) | (412,264) | (455,624) | (402,649) | | | | | |
| (466,845) | (401,784) | (401,784) | 42,501 | 32,175 | (26,749) | (68,798) | (66,585) | (98,703) | 102,352 | (76,357) | (25,540) | (2,934) | 39,572 | | | | | |
| | | | 4,174 | | | | | | | | 49,817 | 23,606 | 42,505 | | | | | |

| | OUTLOOK 2018 Total year 365 | OUTLOOK 2019 31-Jan 31 | OUTLOOK 28-Feb 28 | OUTLOOK 2019 31-Mar 31 | OUTLOOK 30-Apr 30 | OUTLOOK 31-May 31 | OUTLOOK 30-Jun 30 | OUTLOOK 2019 31-Jul 31 | OUTLOOK 31-Aug 31 | OUTLOOK 30-Sep 30 | OUTLOOK 31-Oct 31 | OUTLOOK 30-Nov 30 | OUTLOOK 31-Dec 31 | OUTLOOK 2077 Total year 365 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 18.65 | 19.50 | 19.75 | 19.75 | 19.75 | 19.50 | 19.25 | 19.25 | 19.25 | 19.00 | 19.00 | 19.00 | 19.00 | |
| $ | 763,121 | 811,114 | 742,012 | 821,513 | 795,013 | 774,886 | 800,715 | 800,715 | 764,822 | 790,317 | 764,822 | 790,317 | 788,947 | |
| $ | 761,221 | 811,114 | 742,012 | 821,513 | 795,013 | 774,886 | 800,715 | 800,715 | 764,822 | 790,317 | 764,822 | 790,317 | 788,947 | |
| $ | 9,134,651 | 811,114 | 742,012 | 821,513 | 811,114 | 800,715 | 800,715 | 800,715 | 764,822 | 790,317 | 764,822 | 790,317 | 9,467,362 | |
| | | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | 2077 | |
| | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | 1677 | |
| | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | |
| | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | |
| $ | 768,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 768,000 | |
| $ | 768,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 768,000 | |
| $ | 581,628 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 48,469 | 581,628 | |
| | 1,842 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,345,014 | |
| | 1,338,956 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 112,085 | 1,345,014 | |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | |
| | 200 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 581,628 | |
| | 130 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 727 | |
| | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 727 | |
| $ | 480,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 480,000 | |
| | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 2400 | |
| $ | 288,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 24,000 | 288,000 | |
| | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 1920 | |
| $ | 489755 | 41596 | 3570 | 41596 | 40254 | 41596 | 40254 | 41596 | 41596 | 40254 | 41596 | 40254 | 489755 | |
| | | | | | | | | | | | | | | |
| $ | 10,464,279 | 923,583 | 854,481 | 933,592 | 907,482 | 923,583 | 887,355 | 913,184 | 913,184 | 877,391 | 902,786 | 877,391 | 10,816,990 | |
| | | | | | | | | | | | | | | |
| | 379,097 | 32,197 | 29,081 | 32,197 | 31,159 | 32,197 | 31,159 | 32,197 | 32,197 | 31,159 | 32,197 | 31,159 | 379,097 | |
| | 90,983 | 7,727 | 6,980 | 7,727 | 7,478 | 7,727 | 7,478 | 7,727 | 7,727 | 7,478 | 7,727 | 7,478 | 90,983 | |
| | 125,000 | | | | 75,000 | 50,000 | | | | | | | 125,000 | |
| | 75,819 | 6,439 | 5,816 | 6,439 | 6,232 | 6,439 | 6,232 | 6,439 | 6,439 | 6,232 | 6,439 | 6,232 | 75,819 | |
| | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | |
| | 265,368 | 22,538 | 20,357 | 22,538 | 21,811 | 22,538 | 21,811 | 22,538 | 22,538 | 21,811 | 22,538 | 21,811 | 265,368 | |
| | 90,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 | |
| | 166,803 | 14,167 | 12,796 | 14,167 | 13,710 | 14,167 | 13,710 | 14,167 | 14,167 | 13,710 | 373,710 | 14,167 | 4,464,464 | |
| | 606,555 | 51,516 | 46,530 | 51,516 | 49,854 | 51,516 | 49,854 | 51,516 | 51,516 | 49,854 | 51,516 | 49,854 | 606,555 | |
| $ | 64,000 | 16,000 | 16,000 | 16,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 64,000 | |
| | 720,000 | 60,000 | 16,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 720,000 | |
| | 132,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 132,000 | |
| | 159,221 | 13,323 | 13,323 | 13,323 | 13,323 | 13,323 | 13,323 | 13,323 | 13,323 | 13,323 | 135,323 | 13,323 | 159,221 | |
| | 386,167 | 386,167 | | 386,167 | 373,710 | 14,167 | | | | | | | 1,345,014 | |
| $ | 9,452,058 | 779,256 | 778,417 | 779,256 | 835,977 | 845,256 | 760,977 | 817,256 | 795,256 | 760,977 | 779,256 | 776,977 | 779,256 | 9,488,117 |
| | 180,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| | 76,000 | 2,000 | 38,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 76,000 | |
| | 24,000 | 2,000 | 2,000 | 2,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 24,000 | |
| | 80,097 | 29,097 | 29,097 | 29,097 | 32,159 | 32,159 | 32,159 | 32,159 | 32,159 | 32,159 | 32,159 | 379,097 | 379,097 | |
| | 288,000 | | | | | | | | | | | | 24,000 | |
| | | | | | | | | | | | | | | |
| $ | 1,032,221 | 144,327 | 76,004 | 154,726 | 71,505 | 78,327 | 126,378 | 95,928 | 117,928 | 116,315 | 123,529 | 100,315 | 123,529 | 1,328,873 |

| | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 1,143,602 | 1,093,602 | 1,043,602 | 993,602 | 943,602 | 893,602 | 843,602 | 793,602 | 743,602 | 693,602 | 1,365,403 | 1,315,403 | 1,265,403 | 1,215,403 | 1,328,873 |
| $ | (200,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (600,000) | (500,000) |
| | (13,743) | (1,003) | (883) | (851) | (899) | (846) | (846) | (813) | (767) | (766) | (715) | (712) | (6,277) | (101,101) | 828,873 |
| | (70,170) | (5,996) | (6,110) | (6,942) | (6,098) | (6,148) | (6,147) | (6,379) | (6,226) | (6,225) | (6,227) | (6,260) | (21,516) | (78,511) | 828,873 |
| | 266,429 | 20,022 | 22,096 | 21,324 | 23,969 | 21,400 | 21,777 | 21,033 | 21,047 | 21,516 | 20,887 | 21,516 | (20,887) | (257,521) | (480,099) |
| | (171,679) | (14,280) | (16,487) | (14,413) | (15,185) | (14,540) | (15,309) | (14,721) | (15,496) | (14,862) | (14,993) | (14,993) | (14,993) | (149,596) | 348,774 |
| | (5,000) | | | | | | | | | | | | (5,000) | (5,000) | 348,774 |
| $ | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 4,249,551 | 20,367 |
| | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (17,706) | (1,308,506) |
| | (232,478) | (14,280) | (4,214) | 72,306 | (103,086) | (13,914) | 44,961 | 13,869 | 35,559 | 35,161 | 41,743 | 19,339 | 41,528 | (232,478) | 1,000,000 |
| $ | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| $ | 1,032,221 | 144,327 | 76,064 | 154,726 | 71,505 | 78,327 | 126,378 | 95,928 | 117,928 | 116,315 | 123,529 | 100,315 | 123,529 | 1,328,873 | |
| | (500,000) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (41,667) | (500,000) | |
| | 532,221 | 102,660 | 34,397 | 113,059 | 29,839 | 36,660 | 84,712 | 54,262 | 76,262 | 74,648 | 81,863 | 58,648 | 81,863 | 828,873 | |
| | (492,649) | (40,938) | (38,611) | (40,750) | (39,923) | (40,574) | (39,750) | (40,393) | (40,302) | (40,120) | (39,939) | (39,939) | (39,935) | (480,099) | |
| | 39,572 | 61,722 | (4,214) | 72,306 | (10,086) | (3,914) | 44,961 | 13,869 | 35,959 | 34,161 | 41,743 | 19,339 | 41,528 | 348,774 | |
| $ | 39,572 | 61,722 | 57,508 | 72,306 | 115,426 | 115,814 | 160,775 | 174,644 | 210,603 | 245,764 | 287,507 | 306,846 | 348,774 | 348,774 | |
| $ | 37,795 | 130,637 | 128,492 | 128,492 | 172,010 | 132,308 | 99,426 | 99,317 | 99,317 | 142,136 | 154,457 | 143,564 | 143,564 | 150,518 | |
| | 130,518 | 163,637 | 128,492 | 172,010 | 132,308 | 99,426 | 114,597 | 114,597 | 106,038 | 142,136 | 154,457 | 150,885 | 150,885 | 150,518 | |
| $ | 92,723 | 33,119 | (35,144) | 43,518 | (39,703) | (32,881) | 15,170 | (15,280) | 6,721 | 36,098 | 12,321 | (10,893) | 7,321 | 20,367 | |
| $ | (939,698) | (111,208) | (111,208) | (111,208) | (111,208) | (111,208) | (111,208) | (111,207) | (80,217) | (111,208) | (111,208) | (111,208) | (116,208) | (1,308,506) | |
| $ | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |